SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TANYA CREATIONS, LLC

       Plaintiff,

    v.

ALM V LTD., ALM VI, LTD., ALM VII(R)-2, LTD., ALM VII,
LTD, ALM VIII, LTD, ALM XVI, LTD, APOLLO SENIOR
FLOATING RATE FUND INC, APOLLO TACTICAL INCOME
FUND INC., LEVERAGE SOURCE HOLDINGS, LP with respect
to Series V-A, PPF NOMINEE 2 B.V., RR 1 LTD, CION
INVESTMENT CORPORATION, SIERRA INCOME
CORPORATION, RUSSELL INVESTMENT CO - RUSSELL
MULTI-STRATEGY INCOME FUND, RUSSELL INVESTMENT
COMPANY – RUSSELL GLOBAL OPPORTUNISTIC CREDIT
FUND, RUSSELL INVESTMENTS INSTITUTIONAL FUNDS,
LLC - MULTI-ASSET CORE PLUS FUND, RUSSELL
INVESTMENTS QUALIFYING INVESTOR ALTERNATIVE
FUNDS PLC-RUSSELL INVESTMENTS FLOATING RATE
FUND, STICHTING BLUE SKY ACTIVE FIXED INCOME US
LEVERAGED LOAN FUND, THL CREDIT BANK LOAN
SELECT MASTER FUND, THL CREDIT, INC., THL CREDIT
SENIOR LOAN FUND, THL CREDIT WIND RIVER 2012-1 CLO
LTD, THL CREDIT WIND RIVER 2013-1 CLO LTD., THL
CREDIT WIND RIVER 2013-2 CLO LTD., LANA KRAUTER,
ROB ADAMEK, AL BELLON, LARRY MEYER and
WILMINGTON TRUST, NATIONAL ASSOCIATION

       Defendants.

Index No.

Date of Purchase:

**SUMMONS**

Plaintiff designates New
York County as the place
of trial.

Venue is based on
plaintiff's place of
business

**TO THE ABOVE-NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve

a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the plaintiff's attorney with twenty (20) days after the service of this summons,

exclusive of the day of service (or within thirty (30) days after the service is complete if this

summons is not personally delivered to you within the State of New York); and in the case of

your failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

Dated: Uniondale, New York
       December 19, 2019

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____
       Jeffrey A. Wurst, Esq.
       Michael S. Amato, Esq.
       *Attorney for Plaintiff*
       1425 RXR Plaza
       East Tower, 15th Floor
       Uniondale, New York 11556
       (516) 663-6600

TO:    ALM V LTD.
       9 West 57th Street, 37th Floor
       New York, New York  10019

       ALM VI, LTD.
       9 West 57th Street, 37th Floor
       New York, New York  10019

       ALM VII(R)-2, LTD.
       9 West 57th Street, 37th Floor
       New York, New York  10019

       ALM VII, LTD
       9 West 57th Street, 37th Floor
       New York, New York  10019

       ALM VIII, LTD
       9 West 57th Street, 37th Floor
       New York, New York  10019

       ALM XVI, LTD
       9 West 57th Street, 37th Floor
       New York, New York  10019

APOLLO SENIOR FLOATING RATE FUND INC.
9 West 57th Street, 37th Floor
New York, New York 10019

APOLLO TACTICAL INCOME FUND INC.
9 West 57th Street, 37th Floor
New York, New York 10019

LEVERAGE SOURCE HOLDINGS, LP
9 West 57th Street, 37th Floor
New York, New York 10019

PPF NOMINEE 2 B.V.
9 West 57th Street, 37th Floor
New York, New York 10019

RR 1 LTD
27 Hospital Road
George Town
Grand Kayman KY1-9008

CION INVESTMENT CORPORATION
3 Park Avenue, 36th Floor
New York, New York 10016

RUSSELL INVESTMENT CO - RUSSELL MULTI-STRATEGY INCOME FUND
1205 Tucker Road
North Dartmouth, MA 02747

RUSSELL INVESTMENT COMPANY –
RUSSELL GLOBAL OPPORTUNISTIC CREDIT FUND
1205 Tucker Road
North Dartmouth, MA 02747

RUSSELL INVESTMENTS INSTITUTIONAL FUNDS, LLC –
MULTI-ASSET CORE PLUS FUND
1205 Tucker Road
North Dartmouth, MA 02747

RUSSELL INVESTMENTS QUALIFYING INVESTOR
ALTERNATIVE FUNDS PLC-RUSSELL INVESTMENTS FLOATING RATE FUND
78 Sir John Rogerson's Quay
Dublin, Ireland D02RK57

STICHTING BLUE SKY ACTIVE FIXED INCOME US LEVERAGED LOAN FUND
Prof. E.M. Meijerslaan 1
Amstelveen, Netherlands 1183AV

THL CREDIT BANK LOAN SELECT MASTER FUND
c/o Cogancy Global, Inc.
122 East 42nd Street
18th Floor
New York, New York  10168

THL CREDIT SENIOR LOAN FUND
c/o Cogancy Global, Inc.
122 East 42nd Street
18th Floor
New York, New York  10168

THL CREDIT WIND RIVER 2012-1 CLO LTD.
c/o Cogancy Global, Inc.
122 East 42nd Street
18th Floor
New York, New York  10168

THL CREDIT WIND RIVER 2013-1 CLO LTD.
c/o Cogancy Global, Inc.
122 East 42nd Street
18th Floor
New York, New York  10168

THL CREDIT, INC.
570 Lexington Avenue, 21st Floor
New York, New York 10022

LANA KRAUTER
c/o Charming Charlie
5999 Savoy Drive
Houston, Texas 77036

ROB ADAMEK
c/o National Waste Partners
2538 E. University Dr. Ste 165
Phoenix, AZ 85034

AL BELLON
c/o Cardtronics
302 Marsalis Avenue
Dallas, TX 75203

4

LARRY MEYER
4048 Ballina Drive
Encino, California 91436

WILMINGTON TRUST, NATIONAL ASSOCIATION
401 Broad Hollow Road
Melville, New York 11747

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TANYA CREATIONS, LLC

                Plaintiff,

        v.                                          VERIFIED
                                                COMPLAINT
ALM V LTD., ALM VI, LTD., ALM VII(R)-2, LTD.,
ALM VII, LTD, ALM VIII, LTD, ALM XVI, LTD,      Index. No.
APOLLO SENIOR FLOATING RATE FUND INC,
APOLLO TACTICAL INCOME FUND INC.,
LEVERAGE SOURCE HOLDINGS, LP with respect to
Series V-A, PPF NOMINEE 2 B.V., RR 1 LTD, CION
INVESTMENT CORPORATION, SIERRA INCOME
CORPORATION, RUSSELL INVESTMENT CO -
RUSSELL MULTI-STRATEGY INCOME FUND,
RUSSELL INVESTMENT COMPANY – RUSSELL
GLOBAL OPPORTUNISTIC CREDIT FUND,
RUSSELL INVESTMENTS INSTITUTIONAL FUNDS,
LLC - MULTI-ASSET CORE PLUS FUND, RUSSELL
INVESTMENTS QUALIFYING INVESTOR
ALTERNATIVE FUNDS PLC-RUSSELL
INVESTMENTS FLOATING RATE FUND,
STICHTING BLUE SKY ACTIVE FIXED INCOME US
LEVERAGED LOAN FUND, THL CREDIT BANK
LOAN SELECT MASTER FUND, THL CREDIT, INC.,
THL CREDIT SENIOR LOAN FUND, THL CREDIT
WIND RIVER 2012-1 CLO LTD, THL CREDIT WIND
RIVER 2013-1 CLO LTD., THL CREDIT WIND RIVER
2013-2 CLO LTD., LANA KRAUTER, ROB ADAMEK,
AL BELLON, LARRY MEYER and WILMINGTON
TRUST, NATIONAL ASSOCIATION

                Defendants.

## **COMPLAINT**

      Plaintiff, Tanya Creations, LLC ("Plaintiff" or "Tanya") respectfully alleges for its

complaint and claim of relief as follows:

## **NATURE OF ACTION**

      1.    This action is brought to recover payments guaranteed by the Lender-Owner

870468

Defendants (defined below), who guarantied payments in order to induce Tanya to sells merchandise to Charming Charlie LLC ("Charming Charlie") when it was not credit worthy following its emergence from a Chapter 11 Bankruptcy proceeding which left it under-capitalized.

2.       The Lender-Owner Defendants are private equity funds that own substantially all of the ownership interests in Charming Charlie. In addition, the Lender-Owner Defendants together with the Individual Defendants (defined below) continued to induce Tanya to sell and deliver merchandise after they knew or should have known that neither Charming Charlie nor the Lender-Owner Defendants would pay Tanya for the goods being sold.

3.       On the eve of Charming Charlie filing its second Chapter 11, the Individual Defendants did instruct Tanya to withhold delivery when long before that time they knew or should have known that Tanya would not be paid, thus evidencing a fraudulent scheme conducted by the Individual Defendants and the Lender-Owner Defendants.

## THE PARTIES

4.       Tanya is a limited liability company organized and existing under and pursuant to the laws of the State of Rhode Island with a place of business located at 389 Fifth Avenue, Suite 504, New York, New York 10016, and is qualified to do business in the State of New York.

5.       Upon information and belief, ALM V LTD. is a limited liability company organized and existing under and pursuant to the laws of the State of Delaware.

6.       Upon information and belief, ALM VI, LTD. is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

7.       Upon information and belief, ALM VII(R)-2, LTD. is a limited liability company

2

870468

organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

8.    Upon information and belief, ALM VII, LTD is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

9.    Upon information and belief, ALM VIII, LTD is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

10.    Upon information and belief, ALM XVI, LTD is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

11.    Upon information and belief, APOLLO SENIOR FLOATING RATE FUND INC. is a corporation organized and existing under and pursuant to the laws of the State of Maryland, and is qualified to do business in the State of New York.

12.    Upon information and belief, APOLLO TACTICAL INCOME FUND INC. is a corporation organized and existing under and pursuant to the laws of the State of Maryland, and is qualified to do business in the State of New York.

13.    Upon information and belief, LEVERAGE SOURCE HOLDINGS, LP with respect to Series V-A is a limited liability partnership conducting business in the State of New York.

14.    Upon information and belief, PPF NOMINEE 2 B.V. is a limited liability company organized and existing under and pursuant to the laws of the Netherlands, and is conducting business in the State of New York.

3

15.     Upon information and belief, RR 1 LTD is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

16.     Upon information and belief, CION INVESTMENT CORPORATION is a corporation organized and existing under and pursuant to the laws of the State of Maryland with a place of business located at 3 Park Avenue, 36th Floor, New York, New York 10016, and is qualified to do business in the State of New York.

17.     Upon information and belief, SIERRA INCOME CORPORATION is a corporation organized and existing under and pursuant to the laws of the State of Maryland with a place of business located at 280 Park Avenue, 6th Floor East, New York, New York 10017, and is qualified to do business in the State of New York.

18.     Upon information and belief, RUSSELL INVESTMENT CO - RUSSELL MULTI-STRATEGY INCOME FUND is a company organized and existing under and pursuant to the laws of the State of Massachusetts, and is conducting business in the State of New York.

19.     Upon information and belief, RUSSELL INVESTMENT COMPANY – RUSSELL GLOBAL OPPORTUNISTIC CREDIT FUND is a company organized and existing under and pursuant to the laws of the State of Massachusetts, and is conducting business in the State of New York.

20.     Upon information and belief, RUSSELL INVESTMENTS INSTITUTIONAL FUNDS, LLC - MULTI-ASSET CORE PLUS FUND is a limited liability company organized and existing under and pursuant to the laws of the State of Delaware, and is conducting business in the State of New York.

21.     Upon information and belief, RUSSELL INVESTMENTS QUALIFYING

4

870468

INVESTOR ALTERNATIVE FUNDS PLC-RUSSELL INVESTMENTS FLOATING RATE FUND is a public limited liability company organized and existing under and pursuant to the laws of Ireland, and is conducting business in the State of New York.

22.     Upon information and belief, STICHTING BLUE SKY ACTIVE FIXED INCOME US LEVERAGED LOAN FUND, is organized and existing under and pursuant to the laws of the Netherlands, and is conducting business in the State of New York.

23.     Upon information and belief, THL CREDIT BANK LOAN SELECT MASTER FUND is a private fund organized and existing under and pursuant to the laws of Grand Cayman and is conducting business in the State of New York.

24.     Upon information and belief, THL CREDIT SENIOR LOAN FUND is a statutory trust organized and existing under and pursuant to the laws of the State of Delaware, and is conducting business in the State of New York.

25.     Upon information and belief, THL CREDIT WIND RIVER 2012-1 CLO LTD. is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

26.     Upon information and belief, THL CREDIT WIND RIVER 2013-1 CLO LTD. is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

27.     Upon information and belief, THL CREDIT WIND RIVER 2013-2 CLO LTD. is a limited liability company organized and existing under and pursuant to the laws of Grand Cayman, and is conducting business in the State of New York.

28.     Upon information and belief, THL CREDIT, INC. is a corporation organized and existing under and pursuant to the laws of the State of Massachusetts with a place of business

5

870468

located at 570 Lexington Avenue, 21st Floor, New York, New York 10022, and is conducting business in the State of New York.

29.    Each of the defendants identified in paragraphs numbered "5" through "28" (the "Lender-Owners") provided term loans to Charming Charlie either prior to or during the Prior Bankruptcy.

30.    Wilmington Trust, National Association is a national banking association and is named herein as a nominal defendant against whom no relief is sought and solely in its capacity as administrative agent for the Lender-Owners.

31.    Upon information and belief, the Lender-Owners identified in paragraphs numbered "5" through "15" are all under common management with a place of business located at 9 West 57th Street, 37th Floor, New York, New York 10019.

32.    Upon information and belief, the Lender-Owners identified in paragraphs numbered "18" through "27" are all under common management with a registered agent located at 122 East 42nd Street, 18th Floor, New York, New York 10168.

33.    Upon information and belief the Lender-Owners are private equity funds that obtained substantially all of the equity ownership interest of Charming Charlie pursuant to the Plan of Reorganization (described below).

34.    Upon information and belief, LANA KRAUTER ("Krauter") is an individual and, at all times relevant herein, was the Chief Executive Officer of Charming Charlie headquartered at 5999 Savoy Drive, Houston, TX 77036.

35.    Upon information and belief, ROB ADAMEK ("Adamek") is an individual who, at all times relevant herein, was the Chief Operating Officer of Charming Charlie, and has an actual place of business located at 2538 E. University Dr. Ste 165, Phoenix, AZ 85034.

6

36.     Upon information and belief, AL BELLON ("Bellon") is an individual who, at all times relevant herein, was the Chief Financial Officer of Charming Charlie and has an actual place of business located at 302 Marsalis Avenue, Dallas, TX 75203.

37.     Upon information and belief, LARRY MEYER ("Meyer") is an individual and, at all times relevant herein, was the Chief Restructuring Officer of Charming Charlie with an actual dwelling place located at 4048 Ballina Drive, Encino, CA 91436.  (Meyer, together with Bellon, Adamek and Krauter are collectively referred to as the "Individual Defendants").

## FACTUAL BACKGROUND

38.     Charming Charlie was a chain of retail stores selling jewelry and Charming Charlie.

39.     Since in or about October, 2011, Tanya had been a major supplier to Charming Charlie.

40.     On December 11, 2017 (the "Petition Date"), Charming Charlie and its related entities filed a Chapter 11 proceeding (the "Prior Bankruptcy") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

41.     At all times relevant to this action Tanya was Charming Charlie's largest supplier.

42.     During the early stages of their chapter 11 cases, the Debtors were required to be very creative in securing the support of their many important vendors as their liquidity did not allow them to capitalize on the relief granted and would not sufficiently cover the pre-Petition Date exposure of the vendors demanding "Critical Vendor" treatment.

43.     At the onset of the Prior Bankruptcy, Charming Charlie brought a motion for an order allowing preferred treatment of its critical vendors

44.     To permit Charming Charlie to pay certain obligations of pre-Petition Date

7

870468

creditors, such as Plaintiff, on January 10, 2018, the Bankruptcy Court entered the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors, Foreign Vendors, Shippers, and Import and Export Claimants, and (II) Granting Related Relief* [D.I. 279] (the "Critical Vendor Order").

45.     Pursuant to the Critical Vendor Order, Charming Charlie obtained authority - but not direction - to satisfy the prepetition claims of "Critical Vendors", including Tanya's pre-Petition Date claims.

46.     As a result Tanya escaped incurring losses for its sale of goods to Charming Charlie during the period leading up to the filing of its Prior Bankruptcy.

47.     Several of Charming Charlie's important vendors, including Tanya, provided goods and services during the pendency of the Prior Bankruptcy under acceptable negotiated terms.

48.     Charming Charlie prosecuted its Prior Bankruptcy on an expedited bases and emerged from bankruptcy in under four months.

49.     Charming Charlie  confirmed its *Fourth Amended Joint Plan of Reorganization of Charming Charlie Holdings Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan of Reorganization") on April 3, 2018. A copy of the Plan of Reorganization is annexed hereto as Exhibit "A".

50.     On April 3, 2018 (the "Confirmation Date"), the Bankruptcy Court issued an order confirming the Plan of Reorganization in the Prior Bankruptcy (the "Confirmation Order").

51.     The Plan of Reorganization provided that the post-Confirmation Date equity of the reorganized Charming Charlie would be distributed to its term loan lenders, with the pre-Petition Date term loan lenders receiving 25% of the equity and the lenders who provided term

loans during the bankruptcy proceeding received 75% of the equity of the reorganized Charming Charlie (collectively, the "New Equity").

52.     Upon information and belief, the Lender-Owners are all holders of the New Equity.

53.     Following the Confirmation Date, Tanya provided value to the Lender-Owners and to Charming Charlie by providing over one million ($1,000,000) dollars of merchandise to stock the shelves of Charming Charlie as it attempted to resuscitate its business following its bankruptcy proceedings.

54.     The Prior Bankruptcy was closed on December 27, 2018.

55.     At all times following the Confirmation Date through and including the date that Charming Charlie filed another Chapter 11 petition (as further described below) Charming Charlie was insolvent.

56.     The Plan of Reorganization also provided for a *Key Go-Forward Creditor Program*. (Plan of Reorganization, Exhibit A, Article IV §5).

57.     In order to induce Tanya, and other suppliers, to extend credit to Charming Charlie and to deliver goods and services following its emergence from bankruptcy, Charming Charlie together with its Official Committee of Unsecured Creditors (the "Creditors Committee") and the Lender-Owners, devised a *Key Go-Forward Creditor Program*.

58.     Tanya was an intended beneficiary of the *Key Go-Forward Creditor Program*.

59.     As a direct result of confirmation of the Plan, in furtherance of the *Key Go-Forward Creditor Program* Charming Charlie and the Lender-Owners devised a guaranty program (the "Guaranty Program") to assure vendors that they would be paid.

60.     In order to induce vendors to continue to sell and deliver merchandise to be sold

9

870468

in Charming Charlie retail stores after it emerged from bankruptcy the Plan of Reorganization

provided for and Charming Charlie entered into that certain: (a) *Vendor Payment Financing*

*Credit and Guarantee Agreement* (as amended from time to time) with the Lender-Owners

Defendants dated April 24, 2018, (the "Vendor Financing Agreement "); and (b) *Master Supplier*

*Agreement Governing All Goods Procured by Charming Charlie* (as amended from time to time

the "Master Supplier Agreement") with Tanya dated August 10, 2018. Copies of the Vendor

Financing Agreement and Master Supplier Agreement are annexed hereto as Exhibits "B" and

"C" respectively.

> 61.    The Master Supplier Agreement provides:

> If Charming Charlie has failed to pay to Supplier the amounts due
> under any Contract **** the Lenders shall pay Supplier such
> outstanding amount,….

Master Supplier Agreement, Exhibit C, § 15(a).

> 62.    The purpose of the Vendor Financing Agreement was for the Lender-Owners to

provide loans to Charming Charlie to enable it to pay Eligible Vendors (defined below) for the

Eligible Purchase Orders (defined below) for goods and services provided by Charming Charlie.

> 63.    The Vendor Payment Financing, by its nature, was to fulfill the Lender-Owners'

commitment to assure that Vendors, such as Tanya, were paid for the merchandise they provided

to Charming Charlie.

> 64.    The Vendor Financing Agreement provided:

> All proceeds of …Vendor Payment Financing Loans shall be used to fund Eligible
> Purchase Orders for Eligible Vendors in accordance with the terms and conditions set
> forth herein

Vendor Financing Agreement, Exhibit B, § 5.12.

> 65.    The Vendor Financing Agreement further provides that if Charming Charlie

failed:

> …to timely make all or any portion of a payment in accordance to the terms of an Eligible Purchase Order to an Eligible Vendor***[the Lender-Owners] remain[ed] obligated to fund any Vendor Payment Financing Loans in connection with an Eligible Purchase Order that were received prior to the date of such Event of Default.

Vendor Financing Agreement, Exhibit B, §§10.1(m) and 6.2(b)

66.    Tanya was designated as an Eligible Vendor. (Master Supplier Agreement, Exhibit C, § 15.1(a)).

67.    Thus, the Lender-Owners intended to be obligated to pay Eligible Vendors, such as Tanya, when Charming Charlie failed to pay Eligible Purchase Orders.

68.    The purpose of the Guaranty Program was to induce vendors to continue to do business with Charming Charlie post-Confirmation Date.

69.    Pursuant to the Vendor Financing Agreement, each Lender-Owner severally agreed to make credit extensions to Charming Charlie in an aggregate amount not to exceed the amount of the Lender's Vendor Payment Financing Commitment (the "Vendor Payment Financing Loans").  (Vendor Financing Agreement, Exhibit B, § 2.1).

70.    All proceeds of the Vendor Payment Financing Loans were to be used by Charming Charlie to pay "Eligible Purchase Orders for Eligible Vendors" as defined in the Vendor Financing Agreement.  (Vendor Financing Agreement, Exhibit B, § 5.12(i)).

71.    The Vendor Financing Agreement  provides, in pertinent part,

> "Eligible Purchase Order" shall mean a purchase order that (i) is from an Eligible Vendor and (ii) is issued pursuant to and complies with the terms and conditions of an Eligible Supply Agreement. No purchase order shall qualify as an Eligible Purchase Order as of any date of determination if (i) the aggregate amount of Vendor Payment Financing Loans outstanding as of such date exceeds $500,000 or (ii) Borrower is, or as a result of such additional Eligible Purchase Order Exposure will be, in breach of Section 8.15(c) of this Agreement.

11

870468

Vendor Financing Agreement, Exhibit B, § 5.12(i).

72.     According to the Master Supplier Agreement, Charming Charlie and the Lender-Owners agreed and acknowledged that Charming Charlie's agreement with Tanya qualified as an Eligible Supply Agreement, its purchase orders were Eligible Purchase Orders under the Financing Agreement, and that Tanya was, and would remain, an "Eligible Vendor" (each as defined in the Vendor Financing Agreement).   (Master Supplier Agreement, Exhibit C, § 15.1(a)).

73.     In reliance upon the terms and representations contained in the Vendor Financing Agreement  and pursuant to the Master Supplier Agreement, Tanya continued to supply goods to Charming Charlie.

74.     As consideration for the benefit afforded to Tanya by the Guaranty Program, the Master Supplier Agreement required that Tanya agree to authorize Charming Charlie to deduct a "Fronting Fee" equal to 3% (the "Fronting Fee") of the amount of each Eligible Purchase Order.

75.     In turn, Charming Charlie paid the Lender-Owners a Fronting Fee in an amount equal to 3% of each purchase order issued by Charming Charlie to Tanya.

76.      The Master Supplier Agreement provides:

> Fronting Fee: In consideration for the payment guarantee pursuant to Section 15 of the [Master Supplier] Agreement, [Tanya] agrees that Charming Charlie may, in addition to and after any other allowances and permitted deductions under a Contract, deduct a fronting fee *** from the amount of such Contract in an amount equal to 3.00% of the amount of such Contract…

Master Supplier Agreement, Exhibit C, Schedule C,

77.     The Vendor Financing Agreement  defined the Fronting Fee as:

> <u>Fronting Fee</u>. On the date of each Eligible Purchase Order, Borrower shall pay directly to the Administrative Agent for the

12

870468

Case 1:20-cv-00442-MKV   Document 1-1   Filed 01/16/20   Page 18 of 34

> account of each Lender a one-time fronting fee equal to the Applicable Fronting Amount (the "Fronting Fee"); concurrently therewith, the Borrower shall notify the Administrative agent of the amount of the Applicable Fronting Amount due in connection with such Eligible Purchase Order; provided, however, that the Administrative Agent shall have no responsibility to calculate any Applicable Fronting Amount, or to ascertain or inquire as to the accuracy of any such calculation and shall be entitled to conclusively rely on the Borrower's calculation of such Applicable Fronting Amount. The Fronting Fee shall be deposited by the Borrower into the Vendor Payment Financing Loan Account, and, upon the request of the Required Lender-Owners, sweep into the account of the Administrative Agent, for the account of each Lender, and the Administrative Agent shall promptly remit to each Lender such Lender's pro rata share of such Fronting Fee.

Vendor Financing Agreement , Exhibit B, § 2.1(b)(i).

78. Charming Charlie deducted the Fronting Fee of 3% for each of Tanya's Eligible Purchase Orders made under the Vendor Credit Facility and the Vendor Financing Agreement .

79. Charming Charlie deposited the Fronting Fee into the Vendor Payment Financing Loan Account (the "Vendor Payment Account") maintained by the Debtors for the benefit of the Lender-Owners.  (Vendor Financing Agreement, Exhibit B, § 2.1(b)(i)).

80. Following Charming Charlie's deposit into the Vendor Payment Account, the Lender-Owners (by Wilmington Trust, N.A., their administrative agent) remitted each Lender its *pro rata* share of the Fronting Fee. (Vendor Financing Agreement, Exhibit B, § 2.1(b)(i)).

81. As such, Charming Charlie served as a mere conduit for the Fronting Fee collected from Tanya and be paid to the Lender-Owners.

82. The Master Supplier Agreement further provides that if Charming Charlie failed to pay Tanya the amount due following notice by Tanya to Charming Charlie, the Lender-Owners would pay to Tanya such amount due from Charming Charlie.  (Master Supplier Agreement, Exhibit C § 15.1(a)).

13

870468

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-1    Filed 01/16/20    Page 19 of 34    RECEIVED NYSCEF: 12/19/2019

INDEX NO. 657592/2019

83.     The Vendor Financing Agreement was first amended on September 27, 2018, and a Second Amendment was entered into on February 28, 2019 (the "Second Amendment"). (Vendor Financing Agreement, Exhibit B).

84.     The Lender-Owners entered into the Second Amendment to the Vendor Financing Agreement agreeing to forbear from exercising their rights and remedies against Charming Charlie with respect to the Anticipatory Events of Default, as defined in the document. (Vendor Financing Agreement, Exhibit B, Second Amendment § 3(a)).

85.     In addition, with the Lender-Owners agreeing to forbear, the maturity date of the Vendor Financing Agreement was extended for one year until May 15, 2020. (Vendor Financing Agreement, Exhibit B, Second Amendment § 3(a)).

86.     The Master Supplier Agreement states that payment is guaranteed by or on behalf of Charming Charlie and the Lender-Owners until May 15, 2019, and for so long thereafter as the Vendor Financing Agreement, as it may be amended from time to time, remains in effect. (Master Supplier Agreement, Exhibit C, § 15.1).

87.     Therefore, since the guarantee contained in Section 15.1 is in effect for the same period as the Vendor Financing Agreement, the Master Supplier Agreement was extended through May 15, 2020. A copy of the letter from Al Bellon to the Eligible Vendors relating to the Master Supplier Agreement Extension is annexed hereto as Exhibit "D".

88.     The Lender-Owners entered into the Second Amendment knowing of the Anticipatory Events of Default by Charming Charlie.

89.     As a direct and proximate result of the obligations and representations contained in the Vendor Financing Agreement and Master Supplier Agreement, Tanya continued to extend credit to Charming Charlie and continued to ship merchandise to it.

14

870468

90.     But for the Guaranty Program, Tanya would not have sold goods to Charming Charlie post confirmation of the Plan of Reorganization in the Prior Bankruptcy.

91.     But for the Second Amendment, Tanya would not have sold goods to Charming Charlie after May 19, 2019.

92.     From the commencement of the Guaranty Program through June 28, 2019, Tanya sold and delivered goods to and at the specific request of Charming Charlie, which goods were accepted without protest.

93.     The goods were sold and delivered upon Tanya's reliance upon the guaranties promised and represented by the Lender-Owners.

94.     In addition, Tanya continued to procure goods for Eligible Purchase Orders months in advance of the requested delivery date.

95.     Goods procured by Tanya on behalf of Charming Charlie were manufactured at the specific request and to meet the specific requirements set forth in the Eligible Purchase Orders.

96.     Tanya placed orders for the manufacture of goods to enable it to fulfill Eligible Purchase Orders obligating Tanya to pay its factory suppliers.

97.     By late June 2019, Charming Charlie was in default in payment to Tanya for merchandise sold and delivered under the Guaranty Program.

98.     On July 1, 2019 and again on July 9, 2019, Tanya provided notices to Charming Charlie of its failure to make timely payments consistent with Section 15.1 of the Master Agreement.  Copies of the notices are annexed hereto as Exhibit "E".

99.     Following default in payment by the Debtors, the Lender-Owners failed and refused to pay Tanya for the Eligible Purchase Orders, despite due demand.

15

870468

100.    Following default in payment by the Debtors, the Lender-Owners failed and refused to pay Tanya for the Eligible Purchase Orders, despite their obligation to do so under the Guaranty Program.

101.    The Vendor Financing Agreement and Master Supplier Agreement were intended to:  (i) induce Tanya to sell goods to Charming Charlie upon credit terms; and (ii) benefit Tanya by guaranteeing payment of all Eligible Purchase Orders.

102.    On July 2, 2019, Charming Charlie notified Tanya that Charming Charlie would reject the delivery of goods.

103.    As a result, Tanya ceased delivering goods to Charming Charlie.

104.    However, Charming Charlie continued to approve merchandise until on or about July 10, 2019.

105.    On July 11, 2019, less than seven months following the closing of the Prior Bankruptcy, Charming Charlie and its affiliates filed petitions in the Delaware Bankruptcy Court commencing another Chapter 11 case (the "2019 Bankruptcy").

106.    At the time of the commencement of the 2019 Bankruptcy, Tanya was owed the amount of $1,234,187.60, for goods sold and delivered to Charming Charlie and guaranteed by the Lender-Owners, none of which was paid by the Lender-Owners, despite due demand.

107.    At the time Charming Charlie notified Tanya that it would no longer accept delivery of goods that it had ordered under Eligible Purchase Orders, Tanya was obligated to its own suppliers for goods ordered and manufactured in an amount to be determined at trial but presently believed to be in excess of $500,000.

108.    In addition, Tanya suffered losses as a result of Charming Charlie refusing delivery of merchandise ordered under the Guaranty Program which merchandise was

16

870468

manufactured and procured by Tanya on behalf of Charming Charlie.

## AS AND FOR A FIRST CAUSE OF
## ACTION ON A GUARANTY
### (Against Lender-Owner Defendants)

109.   Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

110.   In order to induce Tanya to continue to do business with Charming Charlie and to sell and deliver goods to Charming Charlie upon credit terms, each of the Lender-Owners executed and delivered the Vendor Financing Agreement and related documents.

111.   Charming Charlie defaulted in its obligations due and owing to Tanya for Eligible Purchase Orders.

112.   Pursuant to the express terms contained in the Vendor Financing Agreement, the Lender-Owners guaranteed payment of the Eligible Purchase Orders to Tanya.

113.   Tanya provided notice to Charming Charlie and the Lender-Owners of Charming Charlie's failure to make payments due and owing to Tanya for Eligible Purchase Orders.

114.   The Lender-Owners have failed and refused to honor their obligations under the Vendor Financing Agreement and the Master Supplier Agreement by failing to pay Tanya for the Eligible Purchase Orders following Charming Charlie's default, despite due demand.

115.   As a direct and proximate result of the Lender-Owners' failure to honor their obligations under the Vendor Financing Agreement and the Master Supplier Agreement, each of the Lender-Owners is jointly and severally liable to Tanya in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

17

870468

## AS AND FOR A SECOND CAUSE OF ACTION
## DECLARING TANYA TO BE A THIRD PARTY BENEFICIARY
### (Against Lender-Owner Defendants)

116.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

117.    The Vendor Financing Agreement and related documents constitute a valid and binding contract by and between Charming Charlie and the Lender-Owners.

118.    The Vendor Financing Agreement and related documents were executed by the Lender-Owners, Charming Charlie and the related parties for the benefit of Tanya and other Eligible Vendors as defined therein.

119.    Tanya was an intended beneficiary of the loans made or to be made by the Lender-Owners to Charming Charlie under the Vendor Financing Agreement.

120.    The actual benefit intended for Tanya was the guarantee of all payments for Eligible Purchase Orders owed to it as provided for in the Master Supplier Agreement.

121.    Although Tanya was not a party to the Vendor Financing Agreement, the purpose of such agreement was to convey the benefit of the guaranty upon Tanya and the Eligible Vendors.

122.    Although the Lender-Owners were not parties to the Master Supplier Agreement, when taken together with the clear and unambiguous language, intent and purpose of the Vendor Financing Agreement, the Lender-Owners were and are obligated to make guaranteed payments to Tanya for the Eligible Purchase Orders.

123.    Based upon the foregoing, Tanya respectfully requests that this Court enter a declaratory judgment that it is an intended third-party beneficiary of the Vendor Financing Agreement  and related documents, and that each of the Lender-Owners is jointly and severally

18

870468

liable to Tanya in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

### AS AND FOR A THIRD CAUSE OF ACTION
### DECLARING LENDER-OWNERS AS THIRD PARTY OBLIGORS
#### (Against all Defendants)

124.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

125.    The Lender-Owners, as parties to the Vendor Finance Agreement, intended that Tanya obtain the benefit of the loans being provided by them to support the payment of Eligible Purchase Orders.

126.    The Lender-Owners entered into the Vendor Finance Agreement in concert with Charming Charlie and Tanya entering into the Master Supplier Agreement.

127.    The Master Supplier Agreement and related documents constitute a valid and binding contract by and between Charming Charlie and Tanya.

128.    The Guaranty Program, as memorialized in the Master Supplier Agreement, taken together with the Vendor Financing Agreement, was created for the benefit of Tanya and similarly situated Eligible Vendors.

129.    Although the Lender-Owners were not parties to the Master Supplier Agreement, such agreement provided that if Charming Charlie failed to pay Tanya for any Eligible Purchase Order, the Lender-Owners shall pay Tanya the outstanding amount. (Master Supplier Agreement, Exhibit C, §15(a)).

130.    At all times the Lender-Owners were aware that Section 15(a) of the Master Supplier Agreement was in effect for the same period of the Vendor Financing Agreement and intended to be obligated to make such payments.

19

131.    Based upon the foregoing, Tanya respectfully requests that this Court enter a declaratory judgment that the Lender-Owners were intended third-party obligors of the Master Supplier Agreement and by virtue of the terms contained in the Vendor Financing Agreement, they agreed to be liable to Tanya in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR**
**FRAUD IN THE INDUCEMENT**
**(Against all Defendants)**

132.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

133.    Pursuant to the express provisions contained in the Vendor Financing Agreement and the Master Supplier Agreement, each of the Defendants induced Tanya to sell and deliver goods to Charming Charlie after it emerged from bankruptcy in reliance upon the guaranteed payments provided for under such agreements.

134.    Each of the Individual Defendants and Lender-Owners benefited from the execution and delivery of the Vendor Financing Agreement and Master Supplier Agreement in the form of the Fronting Fee payments and the value of goods sold and delivered to Charming Charlie by Tanya.

135.    At the time that the Lender-Owners entered into the Vendor Financing Agreement with Charming Charlie and Charming Charlie entered into the Master Supplier Agreement with Tanya, each of the Lender-Owners and the Individual Defendants knew, or should have known, that Tanya was and would continue to rely upon their representations that Tanya would be paid for the Eligible Purchase Orders.

136.    Upon information and belief, the Individual Defendants and the Lender-Owners

20

870468

knew on or prior to February 28, 2019, that Charming Charlie would not be able to pay for goods being purchased from Tanya, that Tanya would continue to rely upon the representations contained in the Vendor Financing Agreement and the Master Supplier Agreement, and continue to sell and deliver goods to Charming Charlie.

137.     Notwithstanding the foregoing, to induce Tanya to continue to sell and deliver goods to Charming Charlie, the Individual Defendants and the Lender-Owners continued to represent to Tanya that it would be paid for goods being sold and delivered to Charming Charlie.

138.     The material continuing representations by the Lender-Owners and the Individual Defendants that Tanya would be paid for Eligible Purchase Orders upon default by Charming Charlie were false at the time that the Vendor Financing Agreement and Master Supplier Agreement were executed.

139.     After Charming Charlie notified the Lender-Owners of the Anticipatory Events of Default, the Lender-Owners and the Individual Defendants knew, or should have known, the material continuing misrepresentations were false, yet entered into the Second Amendment, which in effect extended the guarantee of payment under the Master Supplier Agreement. (Letter from Al Bellon to the Eligible Vendors, Exhibit D).

140.     Furthermore, the Lender-Owners and the Individual Defendants entered into the Second Amendment with the intent to induce Tanya to continue to deliver goods to Charming Charlie despite the Anticipatory Events of Default by extending the guarantee of payment under the Master Supplier Agreement.

141.     Tanya reasonably relied upon the statements and material continuing representations made by the Lender-Owners to Tanya and the other Eligible Vendors.

142.     On or about July 2, 2019, the Individual Defendants advised Tanya to cease

21

delivering goods to Charming Charlie.

143.    However, the Individual Defendants and the Lender-Owners knew prior to July 2, 2019, that Tanya was delivering goods to Charming Charlie that it would not be paid for, yet they delayed in directing Tanya to cease shipments, causing substantial damages to Tanya.

144.    The Individual Defendants' and the Lender-Owners' failure to notify Tanya that the material continuing representations were not true is evidence of their intent to continue to induce Tanya to deliver goods in reliance upon the false representation that payment was guaranteed.

145.    As a direct and proximate result of the fraudulent inducement by the Individual Defendants and Lender-Owners, Tanya has been damaged in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR**
**ACTUAL FRAUD**
**(Against all Defendants)**

146.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

147.    Pursuant to the express provisions of the Vendor Financing Agreement and the Master Supplier Agreement, each of the Defendants agreed and guaranteed to pay to Tanya all amounts due from Charming Charlie to Tanya for each Eligible Purchase Order for which Charming Charlie failed to pay to Tanya.

148.    Each of the Individual Defendants and Lender-Owners benefited from the execution and delivery of the Vendor Financing Agreement and Master Supplier Agreement in the form of the Fronting Fee payments and the value of goods sold and delivered to Charming Charlie by Tanya.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-1    Filed 01/16/20    Page 28 of 34

INDEX NO. 657592/2019
RECEIVED NYSCEF: 12/19/2019

149.    At the time that the Lender-Owners entered into the Vendor Financing Agreement with Charming Charlie and Charming Charlie entered into the Master Supplier Agreement with Tanya, each of the Lender-Owners and the Individual Defendants knew, or should have known, that Tanya was and would continue to rely upon their representations that Tanya would be paid for the Eligible Purchase Orders.

150.    Upon information and belief, the Individual Defendants and the Lender-Owners knew on or prior to February 28, 2019, that Charming Charlie would not be able to pay for goods being purchased from Tanya, that Tanya would continue to rely upon the representations contained in the Vendor Financing Agreement and the Master Supplier Agreement, and continue to sell and deliver goods to Charming Charlie.

151.    The material continuing representations by the Lender-Owners and the Individual Defendants that Tanya would be paid for Eligible Purchase Orders upon default by Charming Charlie were false at the time that the Vendor Financing Agreement and Master Supplier Agreement were executed.

152.    After Charming Charlie notified the Lender-Owners of the Anticipatory Events of Default, the Lender-Owners and the Individual Defendants knew, or should have known, the material continuing misrepresentations were false, yet entered into the Second Amendment, which in effect extended the guarantee of payment under the Master Supplier Agreement. (Letter from Al Bellon to the Eligible Vendors, Exhibit D).

153.    Furthermore, the Lender-Owners and the Individual Defendants entered into the Second Amendment with the intent to induce Tanya to continue to deliver goods to Charming Charlie despite the Anticipatory Events of Default by extending the guarantee of payment under the Master Supplier Agreement.

23

870468

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-1    Filed 01/16/20    Page 29 of 34    RECEIVED NYSCEF: 12/19/2019

INDEX NO. 657592/2019

154.    Tanya reasonably relied upon the statements and material continuing representations made by the Defendants to Tanya and the other Eligible Vendors.

155.    On or about July 2, 2019, the Individual Defendants advised Tanya to cease delivering goods to Charming Charlie.

156.    However, the Individual Defendants and the Lender-Owners knew prior to July 2, 2019, that Tanya was delivering goods to Charming Charlie that it would not be paid for, yet they delayed in directing Tanya to cease shipments, causing substantial damages to Tanya.

157.    The Individual Defendants' and the Lender-Owners' failure to notify Tanya that the material continuing representations were not true is evidence of their intent to continue to induce Tanya to deliver goods in reliance upon the false representation that payment was guaranteed.

158.    As a direct and proximate result of the fraud by the Defendants, Tanya has been damaged in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(Against all Defendants)**

159.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

160.    Each of the Individual Defendants and the Lender-Owners failed and refused to honor their respective obligations to Tanya pursuant to the Vendor Financing Agreement and Master Supplier Agreement and respectively related documents.

161.    The Individual Defendants' failure and refusal to honor their commitments and obligations pursuant to the Vendor Financing Agreement and Master Supplier Agreement

24

870468

constitute a breach of the Individual Defendants' implied covenant of good faith and fair dealing.

162.    The Lender-Owners' failure and refusal to honor their commitments and obligations pursuant to the Vendor Financing Agreement and Master Supplier Agreement constitute a breach of the Lender-Owners' implied covenant of good faith and fair dealing.

163.    Based upon the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR**
**UNJUST ENRICHMENT**
**(Against the Lender-Owner Defendants)**

164.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

165.    Tanya provided goods and services to Charming Charlie at Charming Charlie's special instance and request with an agreed upon value in the amount $1,234,187.60.

166.    In consideration for the Master Supplier Agreement and the Vendor Financing Agreement, Tanya agreed that Charming Charlie could deduct a Fronting Fee of three percent (3%) from the amount of each Eligible Purchase Order.

167.    The Fronting Fee was deposited into the Vendor Payment Account for the benefit of the Lender-Owners.

168.    Upon deposit of the Fronting Fee into the Vendor Payment Account, each Lender received its *pro rata* share of the Fronting Fee pursuant to the Vendor Financing Agreement (Vendor Financing Agreement, Exhibit B, § 2.1(b)(1)).

169.    Charming Charlie deducted the Fronting Fee on each payment to Tanya for Eligible Purchase Orders made under the Vendor Credit Facility, Master Supplier Agreement

25

870468

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.   Case 1:20-cv-00442-MKV   Document 1-1   Filed 01/16/20   Page 31 of 34   INDEX NO. 657592/2019

RECEIVED NYSCEF: 12/19/2019

and Vendor Financing Agreement .

170.    Based upon the foregoing, each of the Lender-Owners has been unjustly enriched at the expense of Tanya for: (i) the value of goods sold and delivered to Charming Charlie; (ii) the value of goods ordered and manufactured for Charming Charlie prior to refusal of shipment; and (iii) the amount of the Fronting Fee payments.

171.    Equity requires that Tanya be compensated for: (i) the value of goods sold and delivered to Charming Charlie; (ii) the value of goods ordered and manufactured for Charming Charlie prior to refusal of shipment; and (iii) the amount of the Fronting Fee payments.

172.    Based upon the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR PROMISSORY ESTOPPEL
### (Against the Lender-Owner Defendants)

173.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth at length hereat.

174.    The Lender-Owners made a clear and unambiguous promise in the Vendor Financing Agreement and Master Supplier Agreement, taken together, guaranteeing payment of Eligible Purchase Orders supplied by Eligible Vendors, such as Tanya.

175.    Tanya relied on the Lender-Owners' promise of payment to continue to sell and deliver goods worth $1,234,187.60 to Charming Charlie and to order and purchase goods that were not accepted for delivery after Charming Charlie emerged from bankruptcy.

176.    Tanya's reliance on the Lender-Owners' promise of payment is reasonable and was foreseeable.

26

870468

INDEX NO. 657592/2019
Case 1:20-cv-00442-MKV   Document 1-1   Filed 01/16/20   Page 32 of 34 RECEIVED NYSCEF: 12/19/2019

177.    Based upon the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Tanya Creations LLC demands judgment as follows:

a.    Against Lender-Owner Defendants on its First Cause of Action, for a money judgment in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law;

b.    Against all Defendants on its Second Cause of Action for a declaratory judgment that Tanya Creations, LLC is an intended third-party beneficiary of the Vendor Financing Agreement , Master Supplier Agreement and related documents;

c.    Against all Defendants on its Third Cause of Action for a declaratory judgment that the Lender-Owners are third-party obligors of the Master Supplier Agreement and related documents;

d.    Against all Defendants on its Fourth Cause of Action for fraud in the inducement in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law;

e.    Against all Defendants on its Fifth Cause of Action for actual fraud in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law;

f.    Against all Defendants on its Sixth Cause of Action for breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial, but in no event less than $1,734,187.60, with interest thereon as provided by law;

870468

g.      Against Lender-Owner Defendants on its Seventh Cause of Action for unjust

enrichment in an amount to be determined at trial, but in no event less than

$1,734,187.60, with interest thereon as provided by law.

h.      Against Lender-Owner Defendants on its Eighth Cause of Action for promissory

estoppel in an amount to be determined at trial, but in no event less than

$1,734,187.60, with interest thereon as provided by law; and

i.      Granting Tanya its applicable fees and expenses including reasonable attorneys'

fees and expenses, together with the costs and disbursements of this action; and

for such other, further and different relief as this Court may deem just and proper.

Dated: December 19, 2019
       Uniondale, New York

RUSKIN MOSCOU FALITSCHEK, P.C.

By: _____

       Jeffrey A. Wurst, Esq.
       Michael S. Amato, Esq.
       Est Tower, 15th Floor
       425 RXR Plaza
       Phone: (516) 663-6600
       E-mail: jwurst@rmfpc.com

*Attorney for Plaintiff, Tanya Creations, LLC*

28

870468

**VERIFICATION**

STATE OF RHODE ISLAND )
)         ss.:
COUNTY OF EAST PROVIDENCE )

Peter Wallick being duly sworn, deposes and says:

I am the President of Tanya Creations, LLC, the plaintiff in this matter. I have read the foregoing Summons and Verified Complaint, and know the contents thereof, and the same are true to the best of my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Peter Wallick

Sworn to before me this
19th day of December, 2019

Angela M. Waite ID# 759078
Notary Public Exp 9/29/2020

870468