# EXHIBIT

# A

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHARMING CHARLIE HOLDINGS INC., *et al.*,[1] | ) Case No. 17-12906 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### FOURTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CHARMING CHARLIE HOLDINGS INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christopher T. Greco (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
Rebecca Blake Chaikin (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:     (302) 426-9193

- and -

Morton Branzburg (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-2700
Facsimile:     (215) 568-6603

*Counsel to the Debtors and Debtors in Possession*

Dated:  March 29, 2018

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Charming Charlie Canada LLC (0693); Charming Charlie Holdings Inc. (6139); Charming Charlie International LLC (5887); Charming Charlie LLC (0263); Charming Charlie Manhattan LLC (7408); Charming Charlie USA, Inc. (3973); and Poseidon Partners CMS, Inc. (3302).  The location of the Debtors' service address is: 6001 Savoy Drive, Houston, Texas 77036.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Article I. DEFINED TERMS AND RULES OF INTERPRETATION | | 1 |
| A. | Defined Terms | 1 |
| B. | Rules of Interpretation | 13 |
| Article II. ADMINISTRATIVE CLAIMS, DIP FACILITIES CLAIMS, PRIORITY TAX CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEES | | 14 |
| A. | Administrative Claims | 14 |
| B. | DIP Facilities Claims | 15 |
| C. | Priority Tax Claims | 16 |
| D. | United States Trustee Statutory Fees | 16 |
| Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | 17 |
| A. | Classification of Claims | 17 |
| B. | Treatment of Claims and Interests | 17 |
| C. | Special Provision Governing Unimpaired Claims | 19 |
| D. | Acceptance or Rejection of the Plan | 20 |
| E. | Nonconsensual Confirmation | 20 |
| F. | Subordinated Claims | 20 |
| G. | Elimination of Vacant Classes | 20 |
| H. | Intercompany Interests | 20 |
| Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN | | 21 |
| A. | General Settlement of Claims | 21 |
| B. | Restructuring Transactions | 21 |
| C. | Corporate Existence | 22 |
| D. | Vesting of Assets in the Reorganized Debtors | 22 |
| E. | Indemnification Provisions in Organizational Documents | 22 |
| F. | Cancellation of Agreements and Equity Interests | 23 |
| G. | Sources for Plan Distributions and Transfers of Funds Among Debtors | 24 |
| H. | Exit Facilities and Approval of Exit Facilities Documentation | 24 |
| I. | GUC Rights | 25 |
| J. | Reorganized Debtors' Equity Interests | 25 |
| K. | Listing of New Equity | 25 |
| L. | Exemption from Registration Requirements | 26 |
| M. | Organizational Documents | 26 |
| N. | Exemption from Certain Transfer Taxes and Recording Fees | 26 |
| O. | Directors and Officers of the Reorganized Debtors | 26 |
| P. | Directors and Officers Insurance Policies | 27 |
| Q. | Preservation of Rights of Action | 27 |
| R. | Corporate Action | 27 |
| S. | Effectuating Documents; Further Transactions | 28 |
| T. | Management Incentive Plan | 28 |
| Article V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; EMPLOYEE BENEFITS; AND INSURANCE POLICIES | | 28 |
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 28 |
| B. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 29 |
| C. | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 30 |
| D. | Contracts and Leases Entered into After the Petition Date | 31 |
| E. | Reservation of Rights | 31 |
| F. | Indemnification and Reimbursement Obligations | 31 |
| G. | Employee Compensation and Benefits | 31 |

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM     INDEX NO. 657592/2019
NYSCEF DOC. NO. 2  Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 4 of 59  NYSCEF: 12/19/2019

Case 17-12906-CSS     Doc 584-1     Filed 04/03/18     Page 4 of 59

Article VI. PROVISIONS GOVERNING DISTRIBUTIONS..............................................................32
    A.    Distribution on Account of Claims and Interests Allowed as of the Effective Date....................32
    B.    Distributions on Account of Claims and Interests Allowed After the Effective Date ................32
    C.    Timing and Calculation of Amounts to Be Distributed ..........................................................33
    D.    Delivery of Distributions ........................................................................................................33
    E.    Compliance with Tax Requirements/Allocations ..................................................................35
    F.    Surrender of Canceled Instruments or Securities....................................................................35
    G.    Claims Paid or Payable by Third Parties..................................................................................36

Article VII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED
    CLAIMS OR EQUITY INTERESTS ..................................................................................36
    A.    Allowance of Claims and Interests ........................................................................................36
    B.    Prosecution of Objections to Claims......................................................................................36
    C.    Estimation of Claims and Interests ........................................................................................36
    D.    Adjustment to Claims and Interests Without Objection..........................................................37
    E.    Time to File Objections to Claims ..........................................................................................37
    F.    Disallowance of Certain Claims .............................................................................................37
    G.    Amendments to Proofs of Claim ............................................................................................37
    H.    Offer of Judgment..................................................................................................................37

Article VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................................38
    A.    Conditions Precedent to the Effective Date ............................................................................38
    B.    Waiver of Conditions .............................................................................................................38
    C.    Effect of Non-Occurrence of Conditions to the Effective Date ...............................................38
    D.    Substantial Consummation ....................................................................................................39

Article IX. RELEASE, INJUNCTION, AND RELATED PROVISIONS .........................................39
    A.    Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of
          Claims, Equity Interests, and Controversies. ..........................................................................39
    **B.**    **Releases by the Debtors**.........................................................................................................39
    **C.**    **Releases by Holders of Claims and Equity Interests** ..........................................................40
    **D.**    **Exculpation**.........................................................................................................................41
    **E.**    **Injunction** ...........................................................................................................................42
    F.    Setoffs and Recoupment ........................................................................................................43
    G.    Release of Liens.....................................................................................................................43

Article X. RETENTION OF JURISDICTION ..............................................................................43

Article XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN ............................45
    A.    Modification of Plan ..............................................................................................................45
    B.    Effect of Confirmation on Modifications................................................................................45
    C.    Revocation of Plan.................................................................................................................45

Article XII. MISCELLANEOUS PROVISIONS ............................................................................46
    A.    Immediate Binding Effect.......................................................................................................46
    B.    Additional Documents ...........................................................................................................46
    C.    Payment of Statutory Fees .....................................................................................................46
    D.    Reservation of Rights.............................................................................................................46
    E.    Successors and Assigns ..........................................................................................................46
    F.    Service of Documents ............................................................................................................46
    G.    Term of Injunctions or Stays..................................................................................................48
    H.    Entire Agreement...................................................................................................................48
    I.    Governing Law ......................................................................................................................48
    J.    Exhibits .................................................................................................................................48
    K.    Nonseverability of Plan Provisions upon Confirmation .........................................................48
    L.    Closing of Chapter 11 Cases..................................................................................................49

M.    Conflicts.................................................................................................49
N.    Dissolution of the Committee ...............................................................49
O.    Section 1125(e) Good Faith Compliance................................................49
P.    Further Assurances ...............................................................................49

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM INDEX NO. 657592/2019
NYSCEF DOC. NO. 2 Case 1:20-cv-00442-MKV Document 1-2 Filed 01/16/20 Page 6 of 59 RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 6 of 59

### FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
### REORGANIZATION OF CHARMING CHARLIE HOLDINGS INC. AND ITS
### DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Charming Charlie Holdings Inc., Charming Charlie Canada LLC, Charming Charlie International LLC, Charming Charlie LLC, Charming Charlie Manhattan LLC, Charming Charlie USA, Inc., and Poseidon Partners CMS, Inc. (each a "Debtor" and, collectively, the "Debtors"), propose this joint plan of reorganization (the "Plan") for the resolution of the outstanding claims against, and equity interests in, the Debtors. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors seek to consummate the Restructuring Transactions on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement, approved on February 13, 2018 [Docket No. 432], for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

### Article I.

### DEFINED TERMS AND RULES OF INTERPRETATION

*A.    Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any date, all accrued fees and reimbursable expenses (including success fees) for services rendered by all Retained Professionals in the Chapter 11 Cases through and including such date, to the extent that such fees and expenses have not been previously paid and regardless of whether a fee application has been filed for such fees and expenses. To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.    "*Administrative Claim*" means a Claim (other than DIP Facilities Claims) for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Accrued Professional Compensation (to the extent Allowed by the Bankruptcy Court); and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

3.    "*Administrative Claims Bar Date*" means the date that is the 30th day after the Effective Date.

4.    "*Affiliate*" means an affiliate as defined in section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein, a Claim or Interest allowed under the Plan, under the Bankruptcy Code, as applicable, or by a Final Order.

6.  *"Assumed Executory Contract/Unexpired Lease List"* means the list (as may be amended) of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the Plan, as determined by the Debtors and the Requisite First Lien Lenders pursuant to the Plan Support Agreement.

7.  *"Avoidance Actions"* means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

8.  *"Ballot"* means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

9.  *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

10.  *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

11.  *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

12.  *"Bar Date Order"* means the *Order (I) Setting Bar Dates For Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 299], entered by the Bankruptcy Court on January 10, 2018.

13.  *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.  *"Bylaws"* means the bylaws of Reorganized HoldCo, substantially in the form included in the Plan Supplement.

15.  *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

16.  *"Causes of Action"* means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

17.  *"Certificate of Incorporation"* means the certificate of incorporation of Reorganized HoldCo, substantially in the form included in the Plan Supplement, which shall be in form and substance reasonably satisfactory to the Requisite First Lien Lenders.

18.  *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

2

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM          INDEX NO. 657592/2019
NYSCEF DOC. NO. 2  Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 8 of 59  RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 8 of 59

19.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

20.    "*Claims Bar Date*" means, as applicable, the Administrative Claims Bar Date, the bar date for Governmental Units, the general bar date, and the contract rejection damages bar date each established pursuant to the Bar Date Order.

21.    "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a)(i) with respect to Administrative Claims, 60 days after the Administrative Claims Bar Date or (ii) with respect to all other Claims, 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

22.    "*Claims Register*" means the official register of Claims and Interests maintained by the Notice and Claims Agent.

23.    "*Class*" means a category of Claims or Equity Interests as set forth in Article III of this Plan pursuant to section 1122(a) of the Bankruptcy Code.

24.    "*Compensation and Benefits Programs*" means all compensation and benefit plans, policies, and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and the employees, former employees and retirees of their subsidiaries, including all savings plans, retirement plans, health care plans, disability plans, and incentive plans, deferred compensation plans, and life, accidental death, and dismemberment insurance plans.

25.    "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

26.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

27.    "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

28.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders; (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners; and (c) the DIP Agents solely to the extent the provisions therein affect the legal and/or economic rights of the DIP Agents and/or DIP Lenders.

29.    "*Consenting Lenders*" has the meaning ascribed to such term in the Plan Support Agreement.

30.    "*Consenting Term Loan Committee*" means that certain ad hoc committee of Holders of Prepetition Term Loan Claims represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP and Young Conaway Stargatt & Taylor LLP and advised by FTI Consulting.

31.    "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

32.    "*CVR Agreement*" means that certain Contingent Value Rights Agreement with respect to the GUC Rights, as amended or otherwise modified from time to time, the substantially final form of which is attached as Exhibit J to the Plan Supplement.

33.    "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date.

3

34. *"Debtor Release"* means the releases set forth in Article IX.B of this Plan.

35. *"DIP ABL Agent"* means Bank of America, N.A., in its capacity as administrative agent and collateral agent under the DIP ABL Facility.

36. *"DIP ABL Agreement"* means that certain Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement, dated as of December 14, 2017, by Charming Charlie LLC, Charming Charlie USA, Inc., as borrowers, the other Debtors, as guarantors, the DIP ABL Agent, and the DIP ABL Lenders, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

37. *"DIP ABL Documents"* has the meaning ascribed to such term in the DIP Orders.

38. *"DIP ABL Facility"* means that certain $35,000,000 debtor-in-possession financing facility, available pursuant to the terms and conditions of the DIP ABL Agreement.

39. *"DIP ABL Facility Claim"* means any Claim derived from, based upon, or secured by the DIP ABL Documents or DIP Orders, including claims for all principal amounts outstanding, interest, fees, expenses, costs and other charges arising under or related to the DIP ABL Facility.

40. *"DIP ABL Lenders"* means the DIP ABL Agent and those lenders from time to time party to the DIP ABL Documents.

41. *"DIP ABL Obligations"* has the meaning ascribed to such term in the DIP Orders.

42. *"DIP Agents"* means the DIP ABL Agent and the DIP Term Loan Agent.

43. *"DIP Agreements"* means the DIP ABL Agreement and the DIP Term Loan Agreement.

44. *"DIP Documents"* means the DIP ABL Documents and the DIP Term Loan Documents.

45. *"DIP Facilities"* means the DIP ABL Facility and the DIP Term Loan Facility.

46. *"DIP Facilities Claim"* means any DIP ABL Claim and DIP Term Loan Claim.

47. *"DIP Lenders"* means the DIP ABL Lenders and the DIP Term Loan Lenders.

48. *"DIP Orders"* means, collectively, the Interim DIP Order and the Final DIP Order.

49. *"DIP Term Loan Agent"* means Wilmington Trust, National Association, in its capacity as successor administrative agent and collateral agent under the DIP Term Loan Facility.

50. *"DIP Term Loan Agreement"* means that certain Senior Secured, Super-Priority Debtor-In-Possession Term Loan and Guarantee Agreement, dated as of December 14, 2017, by Charming Charlie Holdings Inc., as Holdings, Charming Charlie LLC, as borrower, the other Debtors, as guarantors, the DIP Term Loan Agent, and the DIP Term Loan Lenders, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

51. *"DIP Term Loan Documents"* has the meaning ascribed to such term in the DIP Orders.

52. *"DIP Term Loan Facility"* means that certain $60,000,000 debtor-in-possession financing facility, available pursuant to the terms and conditions of the DIP Term Loan Agreement.

53. *"DIP Term Loan Facility Claim"* means any Claim derived from, based upon, or secured by the DIP Term Loan Documents or DIP Orders, including claims for all principal amounts outstanding, interest, fees, expenses, costs and other charges arising under or related to the DIP Term Loan Facility.

54. *"DIP Term Loan Interest Claim"* means any Claim for any accrued and unpaid interest payable under the DIP Term Loan Agreement.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.

INDEX NO. 657592/2019
RECEIVED NYSCEF: 12/19/2019

Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 10 of 59

Case 17-12906-CSS   Doc 584-1   Filed 04/03/18   Page 10 of 59

55.    "*DIP Term Loan Lenders*" means the DIP Term Loan Agent and those lenders from time to time party to the DIP Term Loan Documents.

56.    "*DIP Term Loan New Money Claim*" means any Claim arising under or related to the DIP Term Loan New Money Loans.

57.    "*DIP Term Loan New Money Loans*" means the $20,000,000 in new money financing provided for pursuant to the DIP Term Loan Facility.

58.    "*DIP Term Loan Obligations*" has the meaning ascribed to such term in the DIP Orders.

59.    "*DIP Term Loan Roll-Up Claim*" means any Claim arising under or related to the DIP Term Loan Roll-Up Loans.

60.    "*DIP Term Loan Roll-Up Loans*" means the $40,000,000 in Prepetition Term Loan Claims, which shall be be converted into Claims under the DIP Term Loan Facility pursuant to, and upon entry of, the Final DIP Order.

61.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as amended, supplemented, or modified from time to time in accordance with the Plan Support Agreement, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law, which shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners, solely to the extent the provisions therein affect the legal and/or economic rights of the Owners.

62.    "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement, which shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners [Docket No. 432].

63.    "*Disputed*" means, with respect to any Claim or Interest, except as otherwise provided herein, a Claim or Interest that is not yet Allowed.

64.    "*Distribution Agent*" means the Debtors or any Entity or Entities chosen by the Debtors, in consultation with the Requisite First Lien Lenders, which Entities may include the Notice and Claims Agent, to make or to facilitate distributions required by the Plan.

65.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions under the plan, which date shall be the Confirmation Date.

66.    "*Effective Date*" means the date selected by the Debtors, in consultation with the Requisite First Lien Lenders, that is a Business Day no later than 90 Business Days after the Petition Date (which date may be modified in accordance with the provisions set forth in the Interim DIP Order, the Final DIP Order, the DIP Documents, and the Plan Support Agreement) on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A of this Plan have been (i) satisfied or (ii) waived pursuant to Article VIII.A of this Plan.

67.    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

68.    "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date; *provided* that Equity Interest does not include any Intercompany Interest.

69.    "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code.

5

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM    INDEX NO. 657592/2019
NYSCEF DOC. NO. Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 11 of 59 SCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 11 of 59

70.    *"Exculpated Fiduciaries"* means, collectively, each of the following in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; and (c) with respect to each of (a) and (b) to the extent they were employed in such capacity on or after the Petition Date, such Entity's directors, officers, partners, managers, trustees, assigns, employees, agents, advisory board members, predecessors, successors, heirs, executors and assignees, attorneys, financial advisors, investment bankers, accountants, consultants and other professionals or representatives.

71.    *"Exculpated Parties"* means, collectively: (a) the Exculpated Fiduciaries and (b) the Section 1125(e) Parties.

72.    *"Executory Contract"* means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

73.    *"Existing Equity Holders"* means the Owners and any other Entity that directly or indirectly hold Equity Interests in HoldCo.

74.    *"Exit ABL Agent"* means any agent under the Exit ABL Facility in accordance with the Exit ABL Documentation.

75.    *"Exit ABL Documentation"* means any documentation necessary to effectuate the incurrence of the Exit ABL Facility, forms of which shall be included in the Plan Supplement and shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners.

76.    *"Exit ABL Facility"* means either: (a) a replacement asset-based revolving loan facility pursuant to which the DIP ABL Lenders consent to converting all of their outstanding DIP ABL Facility Claims and commitments under the DIP ABL Facility into commitments under such Exit ABL Facility on such terms and conditions reasonably satisfactory to the Requisite First Lien Lenders, the DIP ABL Lenders, and, the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners or (b) a new asset-based revolving loan facility in an amount sufficient to indefeasibly repay in full in Cash on the Effective Date the DIP ABL Facility and satisfy section 1129 of the Bankruptcy Code, and with such other terms and conditions reasonably satisfactory to (i) the Requisite First Lien Lenders and (ii) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners.

77.    *"Exit ABL Lender"* means any lender under the Exit ABL Facility in accordance with the Exit ABL Documentation.

78.    *"Exit Facilities"* means, collectively, the Exit ABL Facility and the Exit Term Loan Facility.

79.    *"Exit Facilities Documentation"* means, collectively, the Exit ABL Documentation and the Exit Term Loan Documentation.

80.    *"Exit Term Loan Agent"* means any agent under the Exit Term Loan Facility in accordance with the Exit Term Loan Documentation.

81.    *"Exit Term Loan Documentation"* means any documentation necessary to effectuate the incurrence of the Exit Term Loan Facility, forms of which shall be included in the Plan Supplement and shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners.

82.    *"Exit Term Loan Facility"* means the Exit Tranche A Term Loans and the Exit Tranche B Term Loans on terms and conditions (and in an amount) reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners.

83.    *"Exit Term Loan Lender"* means any lender under the Exit Term Loan Facility in accordance with the Exit Term Loan Documentation.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM    INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 12 of 59    RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 12 of 59

84.    "*Exit Tranche A Term Loans*" means the senior secured tranche A term loans in an aggregate principal amount of $20 million that shall be issued in accordance with the terms set forth in the Plan Support Agreement and on such other terms and conditions as shall be set forth in the Plan Supplement, which shall be on terms and conditions reasonably satisfactory to the Requisite First Lien Lenders.

85.    "*Exit Tranche B Term Loans*" means the senior secured tranche B term loans in an aggregate principal amount of $30 million that shall be issued in accordance with the terms set forth in the Plan Support Agreement and on such other terms and conditions as shall be set forth in the Plan Supplement, which shall be on terms and conditions reasonably satisfactory to the Requisite First Lien Lenders.

86.    "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to Prepetition Lenders, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 309], entered by the Bankruptcy Court on January 11, 2018.

87.    "*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

88.    "*General Administrative Claim*" means any Administrative Claim, including Cure Costs, other than a Professional Fee Claim.

89.    "*General Unsecured Claims*" means any unsecured claim (other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Prepetition Term Loan Claim, or an Intercompany Claim) against one or more of the Debtors including (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which a Debtor is a party, and (b) Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by a Debtor related thereto.

90.    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

91.    "*GUC Rights*" means the contingent value rights for Cash or other consideration that shall be issued on such terms and conditions as shall be set forth in the CVR Agreement, which terms shall be reasonably satisfactory to the Requisite First Lien Lenders.

92.    "*Holder*" means an Entity holding a Claim or Interest.

93.    "*HoldCo*" means Charming Charlie Holdings Inc., a Delaware corporation and the ultimate parent of all of the Debtors.

94.    "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

95.    "*Impaired Class*" means a Class that is Impaired.

96.    "*Initial Distribution Date*" means the date that is on or as soon as practicable after the Effective Date when distributions under the Plan shall commence for each Class entitled to receive distributions.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.

INDEX NO. 657592/2019

RECEIVED NYSCEF: 12/19/2019

97. "*Insider*" means an insider as defined in section 101(31) of the Bankruptcy Code.

98. "*Intercompany Claims*" means, collectively, any Claim held by a Debtor against another Debtor or an Affiliate of a Debtor or any Claim held by an Affiliate of a Debtor against a Debtor.

99. "*Intercompany Interest*" means an Equity Interest in a Debtor held by another Debtor.

100. "*Intercreditor Agreement*" means that certain Intercreditor Agreement, dated December 24, 2013, as amended, by and among the Prepetition ABL Agent and the Prepetition Term Loan Agent.

101. "*Interests*" means, collectively, Equity Interests and Intercompany Interests.

102. "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, [Docket No. 294], entered by the Bankruptcy Court on January 10, 2018.

103. "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 93], entered by the Bankruptcy Court on December 13, 2017.

104. "*Key Go-Forward Creditor*" means any Entity (a)(i) from which the Debtors are receiving, and the Reorganized Debtors elect as of the Effective Date to continue receiving, goods and services or (ii) that is a lessor under an Unexpired Lease of nonresidential real property assumed by the Debtors as of the Effective Date, and (b) with whom the Debtors or the Reorganized Debtors, in consultation with the Official Committee and Requisite First Lien Lenders, elect to execute a Key Go-Forward Creditor Agreement.

105. "*Key Go-Forward Creditor Agreements*" means those certain agreements between the Debtors and Key Go-Forward Creditors that shall (a) be reasonably acceptable to the Official Committee and Requisite First Lien Lenders and (b) provide for certain beneficial business terms for the Reorganized Debtors.

106. "*Key Go-Forward Creditor Program*" means the fund in the amount of $1,000,000 to be established on the Effective Date with the proceeds of the Plan Reimbursement, which shall be used in accordance with the Key Go-Forward Creditor Agreements.

107. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

108. "*Local Bankruptcy Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

109. "*Management Incentive Plan*" means the management incentive plan of the Reorganized Debtors to be implemented by the New Board on or as soon as reasonably practicable following the Effective Date, and which management incentive plan shall reserve up to 10 percent of the fully diluted New Equity to be awarded to participants on terms and conditions to be determined by the New Board. The form and allocation of any equity awards granted pursuant to the Management Incentive Plan shall be determined by the New Board (or a committee thereof).

110. "*New Board*" means the initial board of directors of Reorganized HoldCo as of the Effective Date, as determined in accordance with the Plan Support Agreement.

111. "*New Employment Agreements*" means the new employment agreements that the Reorganized Debtors shall enter into on the Effective Date pursuant to the Plan Support Agreement, in each case on terms satisfactory to the Reorganized Debtors and the applicable employee and in such form as shall be set forth in the Plan Supplement.

112. "*New Equity*" means the common equity in Reorganized HoldCo to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.

113.    *"New Organizational Documents"* means such certificates or articles of incorporation, bylaws, or other applicable formation documents of each of the Reorganized Debtors, as applicable, the forms of which shall be included in the Plan Supplement, including the Stockholders Agreement, if any, the Certificate of Incorporation, and the Bylaws, which shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners.

114.    *"Notice and Claims Agent"* means Rust Consulting/Omni Management, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to the *Order (I) Authorizing and Approving the Appointment of Rust Consulting/Omni Bankruptcy as Notice and Claims Agent to the Debtors and (II) Granting Related Relief* [Docket No. 92], entered by the Bankruptcy Court on December 13, 2017, and the *Order (A) Authorizing the Debtors to Employ and Retain Rust Consulting/Omni Bankruptcy as Administrative Agent Nunc Pro Tunc to the Petition Date, and (B) Granting Related Relief* [Docket No. 287], entered by the Bankruptcy Court on January 10, 2018.

115.    *"Official Committee"* means the official committee of unsecured claimholders appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

116.    *"Other Priority Claim"* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

117.    *"Other Secured Claim"* means any Secured Claim against the Debtors other than the DIP Facilities Claims, Prepetition ABL Claims, and the Prepetition Term Loan Claims.

118.    *"Owners"* has the meaning ascribed to such term in the Plan Support Agreement.

119.    *"Periodic Distribution Date"* means the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the immediately preceding Periodic Distribution Date.

120.    *"Petition Date"* means December 11, 2017.

121.    *"Plan"* means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan Support Agreement, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto, each of which shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners.

122.    *"Plan Reimbursement"* means the agreement between the Debtors, the Official Committee, and Mr. Charles J. Chanaratsopon, pursuant to which (a) Mr. Chanaratsopon shall pay $1,000,000 to the Debtors on the Effective Date in settlement of all potential claims and causes of action between Mr. Chanaratsopon and the Debtors, the proceeds of which shall be used by the Debtors to fund the Key Go-Forward Creditor Program and (b) the Debtors, the Official Committee, and Mr. Chanaratsopon shall provide mutual releases of all claims and Causes of Action they may hold against each other, consistent with the terms of the Plan Support Agreement and this Plan, except for an Allowed General Unsecured Claim in the amount of $1.25 million to be granted to Mr. Chanaratsopon on account of severance claims that accrued under his employment agreement following his resignation as CEO of the Debtors on October 17, 2017.

123.    *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits, in each case subject to the terms and provisions of the Plan Support Agreement (including any consent rights as to the form and substance of such documents set forth therein), to be filed on the Plan Supplement Filing Date, as amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Plan Support Agreement, each of which shall be in form and substance reasonably satisfactory to (x) the Requisite First Lien Lenders and (y) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners, including the following documents:  (a) the New Organizational Documents; (b) the Assumed Executory Contract/Unexpired Lease List; (c) the Rejected Executory Contract/Unexpired Lease List; (d) a list of retained Causes of Action; (e) to the extent

known, the identity of the members of the New Board; (f) the Plan Support Agreement; (g) the Exit ABL Documentation (or a term sheet setting forth the material terms thereof); (h) the Exit Term Loan Documentation (or a term sheet setting forth the material terms thereof); (i) the form of New Employment Agreements; (j) additional material terms of the GUC Rights; and (k) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan; *provided* that the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List will be filed no later than March 5, 2018.

124.     "*Plan Supplement Filing Date*" means the date that is at least seven days prior to the date on which objections to Confirmation are due pursuant to the Disclosure Statement Order.

125.     "*Plan Support Agreement*" means that certain Plan Support Agreement entered into on December 10, 2017 by and among the Debtors, the Owners, the Consenting Lenders, and any subsequent Entity that becomes a party thereto pursuant to the terms thereof.

126.     "*Prepetition ABL Agent*" means Bank of America, N.A., in its capacity as administrative agent and collateral agent under the Prepetition ABL Facility.

127.     "*Prepetition ABL Agreement*" means that certain Credit Agreement, dated as of June 22, 2015, as amended, supplemented, or modified from time to time, among the Debtors, the Prepetition ABL Agent, and the Prepetition ABL Lenders.

128.     "*Prepetition ABL Claim*" means any Claim derived from, based upon, or secured by the Prepetition ABL Documents, which Claims shall be deemed Allowed Claims.

129.     "*Prepetition ABL Documents*" means the Prepetition ABL Agreement and any other agreements or documents executed in connection with or related thereto.

130.     "*Prepetition ABL Facility*" means the prepetition senior secured revolving financing in the aggregate principal amount of up to $55,000,000 at any time outstanding provided by the Prepetition ABL Lenders.

131.     "*Prepetition ABL Lenders*" means the Prepetition ABL Agent and the other lenders from time to time party to the Prepetition ABL Facility.

132.     "*Prepetition Term Loan Agent*" means Wilmington Trust, National Association, and its predecessors thereto prior to the Petition Date, each in its capacity as administrative agent and collateral agent under the Prepetition Term Loan Facility.

133.     "*Prepetition Term Loan Agreement*" means that certain Credit Agreement, dated as of December 24, 2013, as amended, supplemented, or modified from time to time, among the Debtors, the Prepetition Term Loan Agent, and the Prepetition Term Loan Lenders.

134.     "*Prepetition Term Loan Claim*" means any Claim held by the Prepetition Term Loan Lenders that is derived from or based upon the Prepetition Term Loan Facility.

135.     "*Prepetition Term Loan Facility*" means the prepetition senior secured term loan credit facility in the original aggregate principal amount of up to $150,000,000 at any time outstanding provided by the Prepetition Term Loan Lenders.

136.     "*Prepetition Term Loan Lenders*" means the Prepetition Term Loan Agent and the banks, financial institutions, and other lenders party to the Prepetition Term Loan Facility from time to time.

137.     "*Priority Tax Claim*" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

138.     "*Pro Rata Share*" means with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM   INDEX NO. 657592/2019
NYSCEF DOC. NO.   Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 16 of 59   NYSCEF: 12/19/2019

Case 17-12906-CSS   Doc 584-1   Filed 04/03/18   Page 16 of 59

139.    "*Professional Fee Claim*" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

140.    "*Professional Fee Escrow Account*" means an interest-bearing escrow account in an amount equal to the Professional Fee Reserve Amount to be funded and maintained by the Reorganized Debtors on and after the Effective Date solely for the purpose of paying all Allowed and unpaid fees and expenses of Retained Professionals in the Chapter 11 Cases.

141.    "*Professional Fee Reserve Amount*" means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Retained Professionals in accordance with Article II.A.2.c of this Plan.

142.    "*Proof of Claim*" means a proof of Claim filed against any Debtor in the Chapter 11 Cases.

143.    "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

144.    "*Rejected Executory Contract/Unexpired Lease List*" means the list (as may be amended) of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be rejected pursuant to the Plan, as determined by the Debtors and the Requisite First Lien Lenders pursuant to the Plan Support Agreement.

145.    "*Rejection Procedures*" means the procedures for the rejection of Executory Contracts and Unexpired Leases approved by the Bankruptcy Court on January 10, 2018, pursuant to the *Order Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases* [Docket No. 286].

146.    "*Released Parties*" means, collectively, the Debtors, the Reorganized Debtors, the Prepetition ABL Agent, the Prepetition Term Loan Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Lenders, the Owners, the DIP Agents, the DIP Lenders, the agents and lenders under the Exit Facilities, the Consenting Lenders, any party to the Plan Support Agreement, the Existing Equity Holders, the Official Committee, and with respect to each of the Entities listed above, such Entity's predecessors, successors, assigns, direct and indirect subsidiaries, affiliates, current and former officers and directors, principals, shareholders, employees, members, partners, managers, agents, advisory board members, attorneys, financial advisors, investment bankers, accountants, consultants, and other professionals or representatives each solely in their capacities as such; *provided, however,* that any Holder of a Claim or Interest that validly "opts out" of the release set forth in its Ballot shall not be a "Released Party."

147.    "*Releasing Parties*" means, collectively, the Debtors, the Reorganized Debtors, the Prepetition ABL Agent, the Prepetition Term Loan Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Lenders, the Owners, the DIP Agents, the DIP Lenders, the agents and lenders under the Exit Facilities, the Consenting Lenders, any party to the Plan Support Agreement, the Existing Equity Holders, the Official Committee, all Holders of Claims or Interests that are presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, all Holders of Claims or Interests that vote to accept or reject the Plan and do not affirmatively elect to "opt out" of being a Releasing Party and Released Party on such Holder's Ballot, all Holders of Claims or Interests in voting Classes that abstain from voting on the Plan and do not affirmatively elect to "opt out" of being a Releasing Party and Released Party on such Holder's Ballot, and, with respect to each of the Entities listed above, such Entity's predecessors, successors, assigns, direct and indirect subsidiaries, affiliates, current and former officers and directors, principals, shareholders, employees, members, partners, managers, agents, advisory board members, attorneys, financial advisors, investment bankers, accountants, consultants, and other professionals or representatives each solely in their capacities as such; *provided* that Holders of Claims or Interests (a) whose solicitation packages were returned to the Debtors or their agent as undeliverable or (b) who did not receive solicitation packages pursuant to paragraph 16(b) of the Disclosure Statement Order on account of service to such Holder of the notice of the disclosure statement hearing being returned undeliverable, shall not be "Releasing Parties" and such Holders shall be set forth on an exhibit to the voting report to be filed by the Notice and Claims Agent.

148.    *"Reorganized Debtors"* means the Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including Reorganized HoldCo.

149.    *"Reorganized HoldCo"* means either (a) Charming Charlie Holdings Inc., or any successor thereto as reorganized pursuant to and under the Plan, or (b) a new corporation or limited liability company that may be formed or caused to be formed by the Debtors (with the consent of the Requisite First Lien Lenders) to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of the Debtors and issue the New Equity to be distributed or sold pursuant to the Plan.

150.    *"Representatives"* means, with regard to an Entity, current and former officers, directors, members (including *ex officio* members), managers, employees, partners, advisors, attorneys, professionals, accountants, investment bankers, investment advisors, actuaries, Affiliates, financial advisors, consultants, agents, and other representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such).

151.    *"Requisite First Lien Lenders"* has the meaning ascribed to such term in the Plan Support Agreement.

152.    *"Restructuring Transactions"* means the transactions described in Article IV.B of this Plan

153.    *"Retained Professional"* means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

154.    *"SEC"* means the Securities and Exchange Commission.

155.    *"Section 510(b) Claims"* means any Claim against a Debtor arising from rescission of a purchase or sale of an equity security of the Debtors or an Affiliate of the Debtors for damages arising from the purchase or sale of such an equity security or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

156.    *"Section 1125(e) Parties"* means, collectively, each of the following in their respective capacities as such (a) the DIP Agents, (b) the DIP Lenders, (c) the Prepetition ABL Agent, (d) the Prepetition ABL Lenders, (e) the Prepetition Term Loan Agent, (f) the Prepetition Term Loan Lenders, (g) the Exit ABL Agent, (h) the Exit ABL Lenders, (i) the Exit Term Loan Agent, (j) the Exit Term Loan Lenders, (k) the Existing Equity Holders, (l) the Consenting Lenders, (m) the Owners, (n) the Debtors' principals, members, affiliates, parents, and subsidiaries, (o) the Official Committee; and (p) with respect to each of the Entities named in (a) through (o) above, such Entity's directors, officers, current and former shareholders (regardless of whether such interests are held directly or indirectly), partners, managers, trustees, assigns, principals, members, employees, agents, affiliates, advisory board members, parents, subsidiaries, predecessors, successors, heirs, executors and assignees, attorneys, financial advisors, investment bankers, accountants, consultants and other professionals or representatives.

157.    *"Secured Claim"* means, when referring to a Claim, a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured claim.

158.    *"Securities"* means any instruments that qualify under section 2(a)(1) of the Securities Act, including the New Equity.

159.    *"Securities Act"* means the Securities Act of 1933, as now in effect or hereafter amended, or any regulations promulgated thereunder.

160.    *"Securities Exchange Act"* means the Securities Exchange Act of 1934, as amended.

161.    *"Stockholders Agreement"* means the stockholders agreement, if any, with respect to the New Equity to be effective on the Effective Date, which shall be included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the Requisite First Lien Lenders.

162.    *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

163.    *"Unimpaired"* means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

164.    *"United States Trustee"* means the United States Trustee for the District of Delaware.

165.    *"Voting Deadline"* means the date and time set forth in the Disclosure Statement Order by which votes to accept or reject the Plan, as applicable, must be actually received by the Notice and Claims Agent.

166.    *"Voting Record Date"* means the date established as the voting record date pursuant to the Disclosure Statement Order.

B.    *Rules of Interpretation*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of this Plan; (e) the words ''herein,'' ''hereof,'' and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (g) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (h) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) any effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; and (m) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Cases under the Bankruptcy Court's CM/ECF system.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  Unless otherwise specified herein, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

3.    All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

4.    Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.

INDEX NO. 657592/2019

RECEIVED NYSCEF: 12/19/2019

Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 19 of 59

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 19 of 59

## Article II.

### ADMINISTRATIVE CLAIMS, DIP FACILITIES CLAIMS, PRIORITY TAX CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facilities Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of this Plan.

A.    *Administrative Claims*

1.    General Administrative Claims

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash: (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if a General Administrative Claim is Allowed after the Effective Date, on the date such General Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as the case may be; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided* that Allowed General Administrative Claims that arise in the ordinary course of the Debtors' business during the Chapter 11 Cases shall be paid in full in Cash in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice.

2.    Professional Claims

a.    Final Fee Applications

All final requests for payment of Professional Fee Claims shall be filed no later than the first Business Day that is 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

b.    Professional Fee Escrow Account

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount, which shall be funded by Reorganized HoldCo. The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account in any way. The amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order; *provided* that obligations with respect to Professional Fee Claims shall not be limited nor deemed limited to the balance of funds held in the Professional Fee Escrow Account. When all such Allowed amounts owing to Retained Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to Reorganized HoldCo without any further action or order of the Bankruptcy Court.

c.    Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors on or before the Effective Date. If a Retained Professional does not provide

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM        INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 20 of 59    NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 20 of 59

such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional. The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

d.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtors, as applicable, shall pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by such Debtor or Reorganized Debtor (as applicable) after the Effective Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court. From and after the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and each Debtor or Reorganized Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

e.      Substantial Contribution Compensation and Expenses

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before the Administrative Claims Bar Date.

3.      Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than DIP Facilities Claims, Cure Costs, or Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than the Administrative Claims Bar Date. If a Holder of an Administrative Claim (other than DIP Facilities Claims, Cure Costs, or Professional Fee Claims) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or the Reorganized Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtors or the Reorganized Debtors, as applicable, may also choose to object to any Administrative Claim no later than the Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

B.      *DIP Facilities Claims*

The DIP Facilities Claims shall be Allowed Claims in the full amount outstanding under the DIP Agreements, including principal, interest, fees, and expenses.

1.      DIP ABL Facility Claims

Except to the extent that a Holder of an Allowed DIP ABL Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of each Allowed DIP ABL Facility Claim, on the Effective Date, each Holder of an Allowed DIP ABL Facility Claim will be paid indefeasibly in full in Cash. Upon the payment or satisfaction of the Allowed DIP ABL Facility Claims in accordance with this Article II.B.1, all

Liens and security interests granted to secure the Allowed DIP ABL Facility Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. As used in this paragraph "paid indefeasibly in full in Cash" shall mean the indefeasible payment in full in cash of all DIP ABL Obligations (including all fees and expenses of the DIP ABL Agent through the Effective Date in accordance with the payoff letter), the cancellation, backing, or cash collateralization of letters of credit under the DIP ABL Facility in accordance with the terms of the DIP ABL Documents, the termination of the DIP ABL Agent's and DIP ABL Lenders' obligation to extend credit under the DIP ABL Facility, and the receipt by the DIP ABL Agent of a countersigned payoff letter in form and substance reasonably satisfactory to the DIP ABL Agent.

      2.    <u>DIP Term Loan Facility Claims</u>

Except to the extent that a Holder of an Allowed DIP Term Loan Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of each Allowed DIP Term Loan Facility Claim, on the Effective Date, each Holder of an Allowed DIP Term Loan Facility Claim will receive its Pro Rata share of: (a) on account of such Holder's aggregate principal amount of DIP Term Loan New Money Claim, the Exit Tranche A Term Loans; (b) on account of such Holder's aggregate principal amount of DIP Term Loan Roll-Up Claim, (i) the Exit Tranche B Term Loans and (ii) 75 percent of the New Equity (subject to dilution only by the New Equity issued in connection with the Management Incentive Plan); and (c) on account of such Holder's DIP Term Loan Interest Claim, (i) Cash equal to the amount of such Holders' DIP Term Loan Interest Claim or (ii) with the consent of the DIP Term Loan Agent and a majority of DIP Term Loan Lenders, Exit Tranche A Term Loans and/or Exit Tranche B Term Loans. Upon the payment or satisfaction of the Allowed DIP Term Loan Facility Claims in accordance with this Article II.B.2, all Liens and security interests granted to secure the Allowed DIP Term Loan Facility Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.    *Priority Tax Claims*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the applicable Debtor or Reorganized Debtor, as applicable, and such Holder; *provided* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtors, Cash in an aggregate amount of such Allowed Priority Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

D.    *United States Trustee Statutory Fees*

The Debtors and the Reorganized Debtors, as applicable, shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' or Reorganized Debtors' business (or such amount agreed to with the United States Trustee or ordered by the Bankruptcy Court), for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## Article III.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims*

This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor. Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, DIP Facilities Claims, and Priority Tax Claims, as described in Article II of this Plan.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Claims and Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| 6 | Equity Interests in HoldCo | Impaired | Deemed to Reject |
| 7 | Intercompany Interests | Unimpaired | Presumed to Accept |
| 8 | Section 510(b) Claims | Impaired | Deemed to Reject |

B.    *Treatment of Claims and Interests*[2]

1.    *Class 1 — Other Priority Claims*

    a.    *Classification*: Class 1 consists of all Other Priority Claims.

    b.    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Priority Claim, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

    c.    *Voting*: Class 1 is Unimpaired and Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

---

[2]    Allowed Claim amounts referenced in this section are subject to adjustment to reflect any changes to the outstanding principal amounts prior to the Effective Date.

2. *Class 2 — Other Secured Claims*

    a.     *Classification*: Class 2 consists of all Other Secured Claims.

    b.     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Secured Claim, on or as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim, at the option of the applicable Debtor with the consent of the Requisite First Lien Lenders, shall (i) be paid in full in Cash including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, (ii) receive the collateral securing its Allowed Other Secured Claim, (iii) receive Reinstatement of such Other Secured Claim, or (iv) other treatment rendering such claim Unimpaired.

    c.     *Voting*:  Class 2 is Unimpaired and Holders of Class 2 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. *Class 3 —Prepetition Term Loan Claims*

    a.     *Classification*: Class 3 consists of Prepetition Term Loan Claims.

    b.     *Allowance*:  On the Effective Date, subject to entry of the Final DIP Order approving the DIP Term Loan Roll-up Claims, the Prepetition Term Loan Claims shall be deemed Allowed in the aggregate principal amount of $90,068,705.10, plus all interest (including any payment-in-kind interest), fees, and other expenses payable under the Prepetition Term Loan Agreement related to the Prepetition Term Loan Facility.

    c.     *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Term Loan Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Prepetition Term Loan Claim, on or as reasonably practicable after the Effective Date, each Holder of an Allowed Prepetition Term Loan Claim shall receive, up to the Allowed amount of its Prepetition Term Loan Claim, its Pro Rata share of 25 percent of the New Equity (subject to dilution only by the New Equity issued in connection with the Management Incentive Plan).

    d.     *Voting*:  Class 3 is Impaired and Holders of Class 3 Prepetition Term Loan Claims are entitled to vote to accept or reject the Plan.

4. *Class 4 — General Unsecured Claims*

    a.     *Classification*: Class 4 consists of all General Unsecured Claims.

    b.     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, on or as reasonably practicable after the Effective Date, each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Rights.

    c.     *Voting*:  Class 4 is Impaired and Holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan.

5. *Class 5 — Intercompany Claims*

    a.     *Classification*: Class 5 consists of all Intercompany Claims.

       b.    *Treatment*: Intercompany Claims shall be, at the option of the applicable Debtor with the consent of the Requisite First Lien Lenders, either: (i) Reinstated; or (ii) canceled and released without any distribution on account of such Claims.

       c.    *Voting*:  Holders of Claims in Class 5 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.    *Class 6 — Equity Interests in HoldCo*

       a.    *Classification*: Class 6 consists of all Equity Interests in HoldCo.

       b.    *Treatment*:  On the Effective Date, all Equity Interests in HoldCo shall be cancelled without any distribution on account of such Equity Interests.

       c.    *Voting*:  Class 6 is Impaired and Holders of Class 6 Equity Interests in HoldCo are conclusively presumed to have rejected the Plan.  Therefore, Holders of Class 6 Equity Interests in HoldCo are not entitled to vote to accept or reject the Plan.

7.    *Class 7 — Intercompany Interests*

       a.    *Classification*: Class 7 consists of all Intercompany Interests.

       b.    *Treatment*:  On the Effective Date, Intercompany Interests shall be Reinstated and the legal, equitable and contractual rights to which Holders of Intercompany Interests are entitled shall remain unaltered to the extent necessary to implement the Plan.

       c.    *Voting*:  Class 7 is Unimpaired and Holders of Class 7 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 7 Intercompany Interests are not entitled to vote to accept or reject the Plan.

8.    *Class 8 — Section 510(b) Claims*

       a.    *Classification*: Class 8 consists of any Section 510(b) Claims.

       b.    *Allowance*:  Notwithstanding anything in the Plan to the contrary, a Class 8 Claim (if existing) may only become Allowed by Final Order of the Bankruptcy Court.  The Debtors are not aware of any asserted Class 8 Claim and believe no Class 8 Claim exists.

       c.    *Treatment*: Except to the extent that a Holder of an Allowed Section 510(b) Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of its Section 510(b) Claims, each Holder of an Allowed Section 510(b) Claim shall be treated as if such Holder was a Holder of Allowed Equity Interests in HoldCo.

       d.    *Voting*:  Class 8 is Impaired and Holders (if any) of Allowed Class 8 Section 510(b) Claims are conclusively presumed to have rejected the Plan.  Therefore, Holders (if any) of Class 8 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

    Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.      *Acceptance or Rejection of the Plan*

    1.      <u>Presumed Acceptance of Plan</u>

Holders of Claims in Classes 1 and 2 and Interests in Class 7 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

    2.      <u>Voting Classes</u>

Each Holder of an Allowed Claim in Classes 3 and 4 shall be entitled to vote to accept or reject the Plan.

    3.      <u>Deemed Rejection of the Plan</u>

Holders of Interests in Class 6 and Holders of Claims in Class 8 are Impaired and shall receive no distributions under the Plan on account of their Interests or Claims (as applicable) and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Interests in Class 6 and Holders of Claims in Class 8 are not entitled to vote on the Plan and the votes of such Holders shall not be solicited.

    4.      <u>Controversy Concerning Impairment</u>

If a controversy arises as to whether any Claims or Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

E.      *Nonconsensual Confirmation*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims. The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

F.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, including the Intercreditor Agreement. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Debtors (with the consent of (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners) reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

G.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

H.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure given the various foreign affiliate-subsidiaries of the Debtors, for the ultimate benefit of the Holders of New Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM        INDEX NO. 657592/2019
NYSCEF DOC. NO.        Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 26 of 59 NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 26 of 59

**Article IV.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims and Equity Interests and controversies resolved pursuant to the Plan. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.      *Restructuring Transactions*

1.      <u>Restructuring Transactions</u>

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may, with the consent of the Requisite First Lien Lenders (with respect to actions taken on the Effective Date), take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; (d) all transactions necessary to provide for the purchase of substantially all of the assets or Interests of any of the Debtors by one or more Entities to be wholly owned by Reorganized Holdco, which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (e) all other actions that the Reorganized Debtors determine, in consultation with the Requisite First Lien Lenders (with respect to actions taken on the Effective Date), are necessary or appropriate.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan. Notwithstanding anything to the contrary in this Article IV.B.1, any Executory Contracts and Unexpired Leases that the Debtors or Reorganized Debtors assume shall be assumed in accordance with Article V of the Plan.

2.      <u>Exit Facilities</u>

On the Effective Date, (a) contemporaneously with termination of the DIP ABL Facility and the satisfaction of the DIP ABL Claims in accordance with Article II.B.1 of this Plan, Reorganized HoldCo will enter into the Exit ABL Facility as provided in the Exit ABL Documentation and (b) contemporaneously with termination of the DIP Term Loan Facility and the satisfaction of the DIP Term Loan Claims in accordance with Article II.B.2 of this Plan, Reorganized HoldCo will enter into the Exit Term Loan Facility as provided in the Exit Term Loan Documentation. Confirmation of the Plan shall be deemed approval of the Exit Facilities and the Exit Facilities Documentation, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Facilities Documentation and such other documents as may be required to effectuate the Exit Facilities. Prior to the Effective Date, the Debtors will use reasonable efforts to obtain a private rating for the Exit Term Loan Facility.

3.      <u>GUC Rights</u>

On the Effective Date, Reorganized HoldCo will enter into the CVR Agreement, and each Holder of an Allowed General Unsecured Claim will be deemed to have received its Pro Rata share of GUC Rights to the extent provided in the Plan. Confirmation of the Plan shall be deemed approval of the GUC Rights and the CVR

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM INDEX NO. 657592/2019
NYSCEF DOC. NO. Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 27 of 59 SCEF: 12/19/2019

Case 17-12906-CSS   Doc 584-1   Filed 04/03/18   Page 27 of 59

Agreement, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization of the Reorganized Debtors to enter into and execute the CVR Agreement and such other documents as may be required to effectuate the GUC Rights.

4.  <u>New Equity</u>

On the Effective Date, upon cancellation of the Equity Interests in HoldCo, Reorganized HoldCo will issue the New Equity to Holders of Claims and Interests to the extent provided in the Plan.

5.  <u>Key Go-Forward Creditor Program</u>

On the Effective Date, the Debtors shall fund the Key Go-Forward Creditor Program with the Plan Reimbursement and, as soon as reasonably practicable thereafter, apply such funds in accordance with the Key Go-Forward Creditor Agreements.

C.  *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise (including pursuant to the New Organizational Documents), and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval. After the Effective Date, one or more of the Reorganized Debtors may be disposed of, wound down, or liquidated in accordance with applicable law without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which such subsidiary is incorporated or any other jurisdiction.

D.  *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that, in accordance with Article IV.Q of this Plan, on the Effective Date, the Debtors and the Reorganized Debtors shall forever waive, relinquish, and release any and all Causes of Action the Debtors and their Estates had, have, or may have had that arise under section 547 of the Bankruptcy Code against any Entity that is being rendered Unimpaired under the Plan and any Entity with whom the Debtors are conducting and will continue to conduct business on and after the Effective Date. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.  *Indemnification Provisions in Organizational Documents*

As of the Effective Date, each Reorganized Debtor's bylaws shall, to the fullest extent permitted by applicable law, provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, current and former managers, directors, officers, employees, or agents at least to the same extent as the certificate of incorporation, bylaws, or similar organizational document of each of the respective Debtors on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted. None of the Reorganized Debtors shall amend and/or restate its certificate of incorporation, bylaws, or similar organizational document after the Effective Date to terminate or materially adversely affect (a) any of the Reorganized Debtors' obligations referred to in the immediately preceding

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 28 of 59    SCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 28 of 59

sentence or (b) the rights of such managers, directors, officers, employees, or agents referred to in the immediately preceding sentence; *provided* that the Reorganized Debtors shall not indemnify directors of the Debtors for any claims or Causes of Action arising out of, or relating to, any act or omission that is a criminal act or constitutes gross negligence or intentional fraud.

F.      *Cancellation of Agreements and Equity Interests*

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except as otherwise specifically provided for in the Plan:  (a) subject to the satisfaction of the DIP Claims in accordance with Article II.B of this Plan, the obligations of the Debtors under the Prepetition ABL Agreement, the Prepetition Term Loan Agreement, the DIP Documents, and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors, the DIP Agents, the Prepetition ABL Agent, and the Prepetition Term Loan Agent shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated or entered into pursuant to the Plan) shall be released and discharged; except that:

1.      Until the satisfaction of the DIP Claims in accordance with Article II.B of this Plan, the DIP Facilities shall continue in effect solely for the purpose of:  (a) allowing the DIP Agents to receive distributions from the Debtors under the Plan and to make further distributions to the Holders of the DIP Facilities Claims on account of such Claims, as set forth in Article VI of this Plan; (b) preserving the DIP Agents' and the DIP Lenders' right to all amounts due under the DIP Agreements or DIP Orders; and (c) preserving the DIP Agents' and the DIP Lenders' right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facilities; *provided* that any Claim or right to payment on account of such indemnification shall be an Administrative Claim regardless of whether such Claim or right to payment was filed by the Administrative Claim Bar Date;

2.      the Prepetition Term Loan Agreement shall continue in effect solely for the purpose of: (a) allowing the Prepetition Term Loan Agent to receive distributions from the Debtors under the Plan and to make further distributions to the Holders of Allowed Claims in Class 3 on account of such Claims, as set forth in Article VI of this Plan; (b) preserving the Prepetition Term Loan Agent's right to payment of its fees and expenses, and allowing the Prepetition Term Loan Agent to exercise its charging lien for the payment of its fees and expenses and for indemnification, pursuant to the terms of the Prepetition Term Loan Agreement; and (c) preserving the right of the Prepetition Term Loan Agent to indemnification from the Debtors pursuant and subject to the terms of the Prepetition Term Loan Agreement;

3.      Until the expiration of the Challenge Period and the indefeasible conversion in full of Prepetition ABL Claims into DIP ABL Claims pursuant to the Interim DIP Order, the Prepetition ABL Agreement shall continue in effect solely for the purpose of: (a) preserving the Prepetition ABL Agent's right to payment of its fees and expenses, and allowing the Prepetition ABL Agent to exercise its charging lien for the payment of its fees and expenses and for indemnification, pursuant to the terms of the Prepetition ABL Agreement; and (b) preserving the right of the Prepetition ABL Agent to indemnification from the Debtors pursuant and subject to the terms of the Prepetition ABL Agreement;

4.    the foregoing provisos shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under the Plan; and

5.    nothing in this Article IV.F shall effect a cancellation of any New Equity, Intercompany Interests, or Intercompany Claims.

Notwithstanding the anything to the contrary in this Plan, the Owners are party to, and have rights and obligations under, the Plan Support Agreement; *provided* that any of the Owners may object to the Plan solely to the extent that the Plan adversely impacts such Owner's ability to utilize its worthless stock deduction prior to the Effective Date without breaching such Plan Support Agreement.

G.    *Sources for Plan Distributions and Transfers of Funds Among Debtors*

The Debtors shall fund distributions under the Plan, with (a) Cash on hand, including cash from operations and the proceeds of the DIP Facilities, (b) the proceeds of the Exit Facilities, (c) the GUC Rights, and (d) the New Equity. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors. The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement (including the Exit ABL Documentation, the Exit Term Loan Documentation, and the New Organizational Documents), shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of directors of the applicable Reorganized Debtors deem appropriate.

H.    *Exit Facilities and Approval of Exit Facilities Documentation*

Confirmation of the Plan shall be deemed to constitute approval of the Exit Facilities and the Exit Facilities Documentation (including all transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Facilities, and all actions to be taken, undertakings to be made and obligations to be incurred by the Debtors or the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations under the Exit Facilities Documentation and such other documents as may be reasonably required or appropriate, in each case, in accordance with the Exit Facilities Documentation.

On the Effective Date, the Exit Facilities Documentation shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Facilities Documentation are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the later of (i) the Effective Date and (ii) satisfaction of the DIP Claims in accordance with Article II.B of this Plan, all of the Liens and security interests to be granted in accordance with the Exit Facilities Documentation (a) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facilities Documentation, (b) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facilities Documentation, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable

24

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 30 of 59   12/19/2019

INDEX NO. 657592/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 30 of 59

state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

I.      GUC Rights

Confirmation of the Plan shall be deemed to constitute approval of the GUC Rights and the CVR Agreement (including all transactions contemplated thereby, and all actions to be taken, undertakings to be made and obligations to be incurred by the Debtors or the Reorganized Debtors in connection therewith) and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations under the CVR Agreement and such other documents as may be reasonably required or appropriate, in each case, in accordance with the GUC Rights. On the Effective Date, the CVR Agreement shall constitute a legal, valid, binding, and authorized obligation of the Reorganized Debtors, enforceable in accordance with its terms. As of the Effective Date, each Holder of an Allowed General Unsecured Claim that receives GUC Rights under the Plan shall be bound by the CVR Agreement, without the need for execution by any party thereto other than Reorganized HoldCo. Each Person or Entity that receives GUC Rights shall automatically be deemed to have accepted the terms of the CVR Agreement and shall automatically be deemed to be a party thereto if, and with the same effect as if, such Person or Entity had delivered a duly executed counterpart signature page to the CVR Agreement, in each case, without any further action.

J.      Reorganized Debtors' Equity Interests

1.      New Equity

On the Effective Date, Reorganized HoldCo shall issue or reserve for issuance all of the New Equity issued or issuable in accordance with the terms herein, subject to dilution on the terms described herein. The issuance of the New Equity by Reorganized HoldCo for distribution pursuant to the Plan is authorized without the need for further corporate action and all of the shares of New Equity issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Other than as contemplated through the issuance of the New Equity pursuant to this Plan, there shall exist on the Effective Date no other equity securities, warrants, options, or other agreements to acquire any equity interest in Reorganized HoldCo.

2.      Stockholders Agreement

Confirmation of the Plan shall be deemed to constitute approval of the Stockholders Agreement. On the Effective Date, Reorganized HoldCo and the Holders Allowed Prepetition Term Loan Claims and Allowed DIP Term Loan Facility Claims shall be deemed to have entered into the Stockholders Agreement with respect to the New Equity in substantially the form included in the Plan Supplement. The Stockholders Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Equity shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized HoldCo.

K.      Listing of New Equity

On the Effective Date, none of the New Equity will be listed on a national securities exchange, the Reorganized Debtors will not be reporting companies under the Securities Exchange Act, the Reorganized Debtors shall not be required to and will not file reports with the SEC or any other governmental entity, and the Reorganized Debtors shall not be required to file monthly operating reports, or any other type of report (other than those described in Article XII.C of this Plan), with the Bankruptcy Court after the Effective Date. To prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, the New Organizational Documents may impose certain trading restrictions, and the New Equity will be subject to certain transfer and other restrictions pursuant to the New Organizational Documents designed to maintain the Reorganized Debtors as private, non-reporting companies.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM    INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 31 of 59 ECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 31 of 59

*L.*    *Exemption from Registration Requirements*

The offering, issuance, and distribution of any Securities, including the New Equity, pursuant to the Plan, and any and all settlement agreements incorporated herein, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder pursuant to section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable, and the Confirmation Order shall so provide. Except as otherwise provided in the Plan or the governing certificates or instruments, any and all New Equity issued under the Plan pursuant to section 1145 of the Bankruptcy Code will be freely tradable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities or instruments, including any such restrictions in the Stockholders Agreement, if any; (b) the restrictions, if any, on the transferability of such Securities and instruments; and (c) any other applicable regulatory approval.

*M.*    *Organizational Documents*

Subject to Article IV.E of this Plan, the Reorganized Debtors shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan, which shall be in form and substance reasonably satisfactory to (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners. Without limiting the generality of the foregoing, as of the Effective Date, Reorganized HoldCo shall be governed by the Certificate of Incorporation and the Bylaws. The New Organizational Documents will comply with section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and their respective New Organizational Documents.

*N.*    *Exemption from Certain Transfer Taxes and Recording Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*O.*    *Directors and Officers of the Reorganized Debtors*

The New Board will initially consist of directors who will be designated in accordance with the terms of the Plan Support Agreement. To the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement or prior to the Confirmation Hearing. Except to the extent that a member of the board of directors of a Debtor continues to serve as a director of such Reorganized Debtor on the Effective Date, the members of the board of directors of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director will be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors and officers of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized Debtor and may be

replaced or removed in accordance with such New Organizational Documents; *provided* that, on the Effective Date, the Reorganized Debtors shall enter into the New Employment Agreements.

P.      *Directors and Officers Insurance Policies*

Notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

In addition, after the Effective Date, the Reorganized Debtors (a) shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date with respect to conduct occurring prior thereto and (b) shall use reasonable efforts to continue to maintain in effect D&O Liability Insurance Policies for a period of at least six years after the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

Q.      *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in Article IX below, all Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan,** and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

Notwithstanding any provision in this Plan or any Order entered in these chapter 11 cases, the Debtors and Reorganized Debtors forever waive, relinquish, and release any and all Causes of Action the Debtors and their estates had, have, or may have that (a) arise under sections 544, 547, 548 and 549 of the Bankruptcy Code against any Entity that is being rendered Unimpaired under the Plan and any Entity with whom the Debtors are conducting and will continue to conduct business on and after the Effective Date and (b) arise under section 547 of the Bankruptcy Code against any Entity with which the Debtors were conducting business as of the Petition Date.

R.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other Entity, including: (a) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (b) selection of the directors, managers, and officers for the Reorganized Debtors; (c) the execution of and entry into the Exit ABL Documentation, the Exit Term Loan Documentation, and the New Organizational Documents; (d) the issuance and distribution of the New Equity and GUC Rights as provided herein; and (e) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the company structure

of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of any Debtors.

On or (as applicable) prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtors (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors including (a) the Exit ABL Documentation, the Exit Term Loan Documentation, and the New Organizational Documents and (b) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.R shall be effective notwithstanding any requirements under non-bankruptcy law.

S.    *Effectuating Documents; Further Transactions*

Prior to, on, and after the Effective Date, the Debtors and Reorganized Debtors and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the Exit ABL Documentation, the Exit Term Loan Documentation, the New Organizational Documents, and any securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan or the Plan Support Agreement.

T.    *Management Incentive Plan*

On or as soon as reasonably practicable following the Effective Date, the New Board on behalf of the Reorganized Debtors will implement the Management Incentive Plan. For the avoidance of doubt, in no event are the Debtors seeking nor is the Court approving any management incentive plan or other executive compensation plan under Section 503(c) of the Bankruptcy Code.

**Article V.**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; EMPLOYEE BENEFITS; AND INSURANCE POLICIES**

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed assumed by the Reorganized Debtors as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code *except* any Executory Contract or Unexpired Lease (a) identified on the Rejected Executory Contract/Unexpired Lease List (which shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date) as an Executory Contract or Unexpired Lease designated for rejection, (b) that is the subject of a separate motion or notice to reject (including a motion or notice pursuant to which the requested effective date of such rejection is after the Effective Date) filed by the Debtors, with the consent of the Requisite First Lien Lenders pursuant to the Plan Support Agreement, and pending as of the Confirmation Hearing, (c) that has been previously rejected pursuant to a Bankruptcy Court order or the Rejection Procedures, or (d) that previously expired or terminated pursuant to its own terms.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts and Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or a Bankruptcy Court order and not assigned to a third party on or prior to the Effective Date, shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms (a) except as such terms

may have been validly modified by order of the Bankruptcy Court and (b) notwithstanding, to the maximum extent permitted by law, any provision in any such assumed Executory Contract or Unexpired Lease that restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision); therefore, consummation of the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, the Debtors (with the consent of the Requisite First Lien Lenders pursuant to the Plan Support Agreement) reserve the right to alter, amend, modify, or supplement the Executory Contracts and Unexpired Leases identified on the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List prior to the Effective Date on notice to the non-Debtor Entities affected by such alteration, amendment, modification, or supplement (and upon such Entities' counsel, if known) to be filed and served no less than (i) three Business Days prior to the effective date of the rejection of the affected Executory Contracts and Unexpired Leases or (ii) fourteen days prior to the effective date of the assumption of the affected Executory Contracts and Unexpired Leases; *provided* that, solely with respect to Unexpired Leases of nonresidential real property, the Debtors shall not alter, amend, modify, or supplement the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List after the Confirmation Date unless the affected non-Debtor Entity party to such Unexpired Lease either (a) consents or (b) attempts to prosecute an untimely objection to the assumption of such Unexpired Lease or related Cure Cost.

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost in Cash on the Effective Date, subject to the limitation described in the following paragraph, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree. No later than March 5, 2018, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, the Debtors shall provide for notices of proposed assumption and proposed Cure Cost (and, to the extent the Debtors seek to assume and assign an Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee and provide adequate assurance of future performance by such assignee within the meaning of section 365 of the Bankruptcy Code) to be filed and served upon applicable contract and lease counterparties (and upon such Entities' counsel, if known), together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a contract or lease counterparty to a proposed Cure Cost must be filed, served, and actually received by the Debtors before the objection deadline provided in the notice of proposed assumption and Cure Cost, which deadline shall be (i) with respect to Unexpired Leases of nonresidential real property, no less than 14 days after the date on which the applicable notice of proposed assumption and proposed Cure Cost is filed and served or (ii) with respect to all Executory Contracts and Unexpired Leases, other than Unexpired Leases of nonresidential real property, no less than 7 days after the date on which the applicable notice of proposed assumption and proposed Cure Cost is filed and served. Any objection by a contract or lease counterparty to a proposed assumption, assumption and assignment, or adequate assurance (other than with respect to a proposed Cure Cost) must be filed, served, and actually received by the Debtors before the Plan Objection Deadline.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Cost will be deemed to have assented to such assumption or Cure Cost. Any objection to a proposed assumption, assumption and assignment, or Cure Cost will be scheduled to be heard by the Bankruptcy Court at the Reorganized Debtors' first scheduled omnibus hearing after which such objection is timely filed. In the event of a dispute regarding (1) the amount of any Cure Cost, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (3) any other matter pertaining to assumption and/or assignment, then such Cure Costs shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty to such Executory Contract or Unexpired Lease; *provided* that the Debtors (with the consent of the Requisite First Lien Lenders) may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further,* that notwithstanding anything to the contrary herein, the Debtors (with the consent of the Requisite First Lien Lenders pursuant to the

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM      INDEX NO. 657592/2019
NYSCEF DOC. NO.      Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 35 of 59 SCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 35 of 59

Plan Support Agreement) reserve the right to reject, or nullify the assumption of, any Executory Contract or Unexpired Lease within 25 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

Notwithstanding anything to the contrary in this Plan, with respect to any assumed Unexpired Lease of nonresidential real property, the Debtors and Reorganized Debtors shall remain liable for: (1) amounts owed under the assumed Unexpired Lease of nonresidential real property that are unbilled or not yet due as of the Effective Date, regardless of when such amounts accrued, such as common area maintenance, insurance, taxes, and similar charges; (2) any regular or periodic adjustment or reconciliation of charges under the assumed Unexpired Lease of nonresidential real property which are not due or have not been determined as of the date of the Effective Date; (3) any percentage rent that may come due under the assumed Unexpired Lease of nonresidential real property; (4) indemnification obligations, if any, as of the date of the Effective Date; and (5) any unpaid Cure Costs or post-assumption obligations under the assumed Unexpired Lease of nonresidential real property, in each case calculated in accordance with the terms of any applicable amendment to such Unexpired Lease of nonresidential real property. All rights of the parties under any assumed Unexpired Lease of nonresidential real property or applicable law for setoff, recoupment, or subrogation shall survive, notwithstanding any term or condition of the Plan to the contrary. Other than with respect to Cure Costs fixed in connection with this Plan, all rights of the parties to any assumed Unexpired Lease of nonresidential real property to dispute amounts due thereunder are preserved. For the avoidance of doubt, the Cure Costs fixed in connection with this Plan do not include (a) amounts that have been waived or deferred pursuant to the terms of an amendment to an Unexpired Lease of nonresidential real property, which amounts will be paid in accordance with the terms of such amendment and pursuant to this paragraph, or (b) amounts that have been waived, discounted, deferred, or otherwise addressed pursuant to the terms of a deferred payment plan, which amounts will be paid in accordance with the terms of such deferred payment plan, which amounts shall be paid notwithstanding any release or injunction provided in the Plan.

Subject to the terms of the immediately preceding paragraph, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Cost, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the Cure Cost paid, shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors will continue to honor all postpetition and post-Effective Date obligations under any assumed Executory Contracts and Unexpired Leases in accordance with their terms, regardless of whether such obligations are listed as a Cure Cost, and whether such obligations accrued prior to or after the Effective Date, and neither the payment of cure nor entry of the Confirmation Order shall be deemed to release the Debtors or the Reorganized Debtors from such obligations.

C.    *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Notice and Claims Agent within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; *provided* that, with respect to nonresidential real property leases rejected pursuant to the Plan, Proofs of Claim arising from the rejection or repudiation of such lease must be filed with the Notice and Claims Agent within thirty (30) days after the effective date of such rejection. **Any Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases that are not timely filed shall be deemed disallowed.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B.4 of this Plan.

D.       *Contracts and Leases Entered into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any Assumed Executory Contracts and Unexpired Leases) that have not been rejected as of the Confirmation Date will survive and remain unaffected by entry of the Confirmation Order.

E.       *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, nor the Debtors' delivery of a notice of proposed assumption and proposed cure amount to applicable contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

F.       *Indemnification and Reimbursement Obligations*

On and from the Effective Date, and except as prohibited by applicable law or subject to the limitations set forth herein, the Reorganized Debtors shall assume all indemnification obligations currently in place, whether in the bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts (if assumed) or other agreements for the directors, officers, managers, and employees serving before or after the Petition Date and the attorneys, other professionals, and agents, in each case employed by the Debtors in such capacity as of the Effective Date.

G.       *Employee Compensation and Benefits*

1.       Compensation and Benefit Programs

Subject to the provisions of the Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

a.       all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Program that provide for rights to acquire Equity Interests in any of the Debtors;

b.       Compensation and Benefits Programs listed in the Plan Supplement as executory contracts to be rejected;

c.       Compensation and Benefits Programs that have previously been rejected; and

d.       Compensation and Benefits Programs that, as of the entry of the Confirmation Order, are the subject of pending rejection procedures or a motion to reject, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

Any assumption of Compensation and Benefits Programs pursuant to the terms herein shall not be deemed to trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a Compensation and Benefits Program counterparty timely objects to the assumption contemplated by the Plan in which case any such Compensation and Benefits Program shall be deemed rejected as of immediately prior to the Petition Date).  No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to the Plan other than those applicable immediately prior to such assumption.

2.    Workers' Compensation Programs

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance. All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs, and plans; *provided, further,* that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

**Article VI.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.    *Distribution on Account of Claims and Interests Allowed as of the Effective Date*

Except as otherwise provided in the Plan or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date shall be made on the Initial Distribution Date; *provided* that (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) in accordance with Article II.C herein, Allowed Priority Tax Claims, unless otherwise agreed, shall receive (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable nonbankruptcy law; (ii) such other treatment as may be agreed to by such Holder and the applicable Debtors or otherwise determined upon an order of the Bankruptcy Court; or (iii) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

B.    *Distributions on Account of Claims and Interests Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim; *provided* that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article IX.A of this Plan and paid on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM    INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 38 of 59    RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 38 of 59

C.    *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Initial Distribution Date each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. If and to the extent that any Disputed Claims exist, distributions on account of such Disputed Claims shall be made pursuant to Article VI.B and Article VII of this Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

D.    *Delivery of Distributions*

1.    Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

3.    Delivery of Distributions on Prepetition Term Loan Claims

The Prepetition Term Loan Agent shall be deemed to be the Holder of all Allowed Class 3 Claims for purposes of distributions to be made hereunder, and all distributions on account of such Allowed Claims shall be made to the Prepetition Term Loan Agent. As soon as practicable following compliance with the requirements set forth in Article VI of this Plan, the Prepetition Term Loan Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Allowed Class 3 Claims in accordance with the terms of the Prepetition Term Loan Agreement and the Plan. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition Term Loan Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the Prepetition Term Loan Agent.

4.    Delivery of Distributions on DIP Facilities Claims

The DIP ABL Agent shall be deemed to be the holder of all DIP ABL Facility Claims for purposes of distributions to be made hereunder, and all distributions on account of such DIP ABL Facility Claims shall be made to the DIP ABL Agent. As soon as practicable following compliance with the requirements set forth in Article VI of this Plan, the DIP ABL Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of DIP ABL Facility Claims in accordance with the terms of the DIP ABL Facility, subject to any modifications to such distributions in accordance with the terms of the Plan. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the DIP ABL Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the DIP ABL Agent.

The DIP Term Loan Agent shall be deemed to be the holder of all DIP Term Loan Facility Claims for purposes of distributions to be made hereunder, and all distributions on account of such DIP Term Loan Facility Claims shall be made to the DIP Term Loan Agent. As soon as practicable following compliance with the requirements set forth in Article VI of this Plan, the DIP Term Loan Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of DIP Term Loan Facility Claims in accordance with the terms of the DIP Term Loan Facility, subject to any modifications to such distributions in accordance with the

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM          INDEX NO. 657592/2019
NYSCEF DOC. NO.   Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 39 of 59SCEF: 12/19/2019

Case 17-12906-CSS     Doc 584-1     Filed 04/03/18     Page 39 of 59

terms of the Plan. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the DIP Term Loan Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the DIP Term Loan Agent.

5.      Distributions by Distribution Agents

The Debtors and the Reorganized Debtors, as applicable, shall have the authority to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder. To the extent the Debtors (in consultation with the Requisite First Lien Lenders) and the Reorganized Debtors, as applicable, determine to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain a surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Debtors or the Reorganized Debtors, as applicable.

The Debtors or the Reorganized Debtors, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents. The Distribution Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable. In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Debtors or the Reorganized Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

6.      Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtors and the Distribution Agents shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or fractional share of New Equity under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Equity (up or down), with half dollars and half shares of New Equity or less being rounded down.

7.      Undeliverable Distributions

        a.      Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to Article VI.D.7.b of this Plan, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

        b.      Failure to Claim Undeliverable Distributions

No later than 60 days after an initial distribution has been made to each Class entitled to receive a distribution under the Plan, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM          INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 40 of 59 SCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 40 of 59

Reorganized Debtors for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within 60 days after the filing of the list of Holders of undeliverable distributions shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.

Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment laws, all such distributions shall revert to the Reorganized Debtors. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

c.       Failure to Present Checks

Checks issued by the Reorganized Debtors (or their Distribution Agent) on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks no later than 70 days after the issuance of such checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.

Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.

Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment laws, all such distributions shall revert to the Reorganized Debtors. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

E.       *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

F.       *Surrender of Canceled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Equity Interest shall be deemed to have surrendered such certificate or instrument to the Distribution Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM
INDEX NO. 657592/2019
NYSCEF DOC. NO. Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 41 of 59 RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 41 of 59

G.    *Claims Paid or Payable by Third Parties.*

1.    Claims Payable by Insurance

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.

2.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**Article VII.**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

A.    *Allowance of Claims and Interests*

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date.  This Article VII shall not apply to the DIP Facilities Claims or Prepetition Term Loan Claims, which Claims shall be Allowed in full and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection or any other challenges under any applicable law or regulation by any person or Entity.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order and DIP Orders), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.    *Prosecution of Objections to Claims*

Except as otherwise specifically provided in the Plan, the Reorganized Debtors shall have the sole authority:  (a) to file, withdraw, or litigate to judgment objections to Claims or Interests; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection; *provided* that if the Bankruptcy Court resolves the Allowed amount of a Claim, the Debtors and Reorganized Debtors, as applicable, shall not be permitted to seek an estimation of such Claim).  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the

Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.       *Adjustment to Claims and Interests Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted on the Claims Register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.       *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

F.       *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or an order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors. All Claims filed on account of an indemnification obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court. All Claims filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit, without any further notice to or action, order or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

G.       *Amendments to Proofs of Claim*

On or after the Effective Date, a Proof of Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Proof of Claim or Interest filed shall be deemed disallowed in full and expunged without any further action by the Debtors or Reorganized Debtors (as applicable) or notice to the Bankruptcy Court or any other Entity.

H.       *Offer of Judgment*

The Reorganized Debtors are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the Holder of a Claim or Interest must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors are entitled to setoff such amounts against the amount of any distribution to be paid to such Holder in accordance with Article IX.F without any further notice to or action, order, or approval of the Bankruptcy Court.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM     INDEX NO. 657592/2019
NYSCEF DOC. NO.     Case 1:20-cv-00442-MKV     Document 1-2     Filed 01/16/20     Page 43 of 59 NYSCEF: 12/19/2019

Case 17-12906-CSS     Doc 584-1     Filed 04/03/18     Page 43 of 59

**Article VIII.**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

A.    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.    Each of the DIP Orders shall have been entered, shall be in full force and effect, and, with respect to the Final DIP Order, shall be a Final Order.

3.    The Confirmation Order shall have been entered, shall be in full force and effect, and shall be a Final Order.

4.    The Exit Facilities shall have been consummated in all material respects in accordance with the Exit Facilities Documentation.

5.    The New Employment Agreements shall have been consummated in all material respects in accordance with the Plan Support Agreement and the terms set forth in the Plan Supplement.

6.    All documents and agreements necessary to implement the Plan shall have been executed and tendered for delivery. All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7.    All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

8.    The Professional Fee Escrow Account shall have been established and funded.

9.    All material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained.

10.    The Plan Support Agreement shall not have been terminated in accordance with its terms as to all parties thereto and remains in full force and effect.

B.    *Waiver of Conditions*

The Debtors (with the consent of (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent such waiver affects the legal and/or economic rights of the Owners) or the Reorganized Debtors, as applicable, may waive any of the conditions to the Effective Date set forth above at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan. The failure of the Debtors or Reorganized Debtors, as applicable, the Requisite First Lien Lenders, or the Owners to exercise any of the foregoing rights shall not be deemed a waiver of such rights or any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

C.    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur on or before the termination of the Plan Support Agreement, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims, Interests, or

Causes of Action; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

D.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

### Article IX.

### RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of Claims, Equity Interests, and Controversies.*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Equity Interest is Allowed; or (3) the Holder of such Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan. For the avoidance of doubt, nothing in this Article IX.A shall affect the rights of Holders of Claims and Interests to seek to enforce the Plan, including the distributions to which Holders of Allowed Claims and Interests are entitled under the Plan.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities.

B.    *Releases by the Debtors*

PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, PURSUANT TO THE CONFIRMATION ORDER AND ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY ARE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER DEEMED RELEASED, ACQUITTED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE DEBTORS' ESTATES FROM ANY AND ALL

CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, DEBTS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE REORGANIZED DEBTORS, THE CHAPTER 11 CASES, THE DIP AGREEMENTS AND DIP FACILITIES, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY (INCLUDING THE PREPETITION ABL FACILITY AND PREPETITION ABL DOCUMENTS), THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE PLAN SUPPORT AGREEMENT, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE DOCUMENTATION AND NEGOTIATION OF THE EXIT TERM LOAN FACILITY, THE EXIT ABL FACILITY, ANY OTHER EXIT FINANCING FACILITIES, AND ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE.

THE FOREGOING RELEASE (1) SHALL NOT APPLY TO ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATIONS ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS ENTERED INTO PURSUANT TO, IN CONNECTION WITH OR CONTEMPLATED BY THE PLAN, (2) SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT, AND (3) SHALL NOT RELEASE ANY CLAIMS HELD BY ANY NON-DEBTOR. UPON THE EFFECTIVE DATE, INCLUDING THE EFFECTIVENESS OF THE RELEASES SET FORTH HEREIN AND AS WILL BE SET FORTH IN THE PLAN AND CONFIRMATION ORDER, ANY CLAIMS FILED BY AN OWNER WILL BE DEEMED EXPUNGED WITHOUT FURTHER ACTION. FOR THE AVOIDANCE OF DOUBT, THE DEBTORS AND REORGANIZED DEBTORS WILL CONTINUE TO HONOR ALL POSTPETITION AND POST-EFFECTIVE DATE OBLIGATIONS UNDER THE EXIT TERM LOAN FACILITY, THE EXIT ABL FACILITY, ANY OTHER EXIT FINANCING FACILITIES, AND ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS.

C.    *Releases by Holders of Claims and Equity Interests*

AS OF THE EFFECTIVE DATE, EACH OF THE RELEASING PARTIES (REGARDLESS OF WHETHER A RELEASING PARTY IS A RELEASED PARTY) SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED, ACQUITTED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS AND THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, DEBTS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF A DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF

40

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM    INDEX NO. 657592/2019
NYSCEF DOC. NO.   Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 46 of 59  RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS   Doc 584-1   Filed 04/03/18   Page 46 of 59

THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE REORGANIZED DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE CHAPTER 11 CASES, THE DIP AGREEMENTS AND DIP FACILITIES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY (INCLUDING THE PREPETITION ABL FACILITY AND THE PREPETITION ABL DOCUMENTS), THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE PLAN SUPPORT AGREEMENT, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE DOCUMENTATION AND NEGOTIATION OF THE EXIT TERM LOAN FACILITY, THE EXIT ABL FACILITY, ANY OTHER EXIT FINANCING FACILITIES, AND ANY RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE (A) ANY OBLIGATION OF THE DEBTORS OR THE REORGANIZED DEBTORS ARISING UNDER OR IN CONNECTION WITH THE EXIT FACILITIES, (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, POST-EFFECTIVE DATE OBLIGATIONS ARISING UNDER OR IN CONNECTION WITH THE DIP TERM LOAN FACILITY, THE EXIT TERM LOAN FACILITY, THE EXIT ABL FACILITY, ANY OTHER EXIT FACILITIES, AND ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS), OR (C) THE RIGHT TO RECEIVE DISTRIBUTIONS FROM THE DEBTORS OR THE REORGANIZED DEBTORS ON ACCOUNT OF AN ALLOWED CLAIM AGAINST THE DEBTORS PURSUANT TO THIS PLAN.

NOTWITHSTANDING THE FOREGOING, THE DEBTORS AND THE REORGANIZED DEBTORS WILL CONTINUE TO HONOR ALL POSTPETITION AND POST-EFFECTIVE DATE OBLIGATIONS UNDER ANY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN ACCORDANCE WITH THEIR TERMS, REGARDLESS OF WHETHER SUCH OBLIGATIONS ARE LISTED AS A CURE AMOUNT, AND WHETHER SUCH OBLIGATIONS ACCRUED PRIOR TO OR AFTER THE EFFECTIVE DATE, AND NEITHER THE PAYMENT OF CURE NOR ENTRY OF THE CONFIRMATION ORDER SHALL BE DEEMED TO RELEASE THE DEBTORS OR THE REORGANIZED DEBTORS FROM SUCH OBLIGATIONS.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE (1) DOES NOT RELEASE THE PERSONAL LIABILITY OF ANY OF THE AFOREMENTIONED RELEASED PARTIES FOR ANY STATUTORY VIOLATION OF APPLICABLE TAX LAWS OR BAR ANY RIGHT OF ACTION ASSERTED BY A GOVERNMENTAL TAXING AUTHORITY AGAINST THE AFOREMENTIONED RELEASED PARTIES FOR ANY STATUTORY VIOLATION OF APPLICABLE TAX LAWS AND (2) SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT.

D.      *Exculpation*

UPON AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTORS AND THEIR DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, RESTRUCTURING CONSULTANTS AND OTHER PROFESSIONAL ADVISORS AND AGENTS WILL BE DEEMED TO HAVE SOLICITED ACCEPTANCES OF THIS PLAN IN GOOD

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM    INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 47 of 59    RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 47 of 59

FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING SECTION 1125(E) OF THE BANKRUPTCY CODE.

EXCEPT WITH RESPECT TO ANY ACTS OR OMISSIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS, THE EXCULPATED FIDUCIARIES (AND, SOLELY TO THE EXTENT APPROPRIATE UNDER AND PROVIDED BY SECTION 1125(E) OF THE BANKRUPTCY CODE, THE SECTION 1125(E) PARTIES), SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING, OR EFFECTING THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS; *PROVIDED* THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT; *PROVIDED, FURTHER,* THAT TO THE EXTENT PERMITTED BY APPLICABLE LAW EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.

THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING WITH REGARD TO THE DISTRIBUTIONS OF NEW EQUITY AND ISSUANCE OF GUC RIGHTS PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT AND SHALL NOT BE LIABLE AT ANY TIME FOR THE VIOLATIONS OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

*E.    Injunction*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (A) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (B) HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.B OF THIS PLAN; (C) HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.C OF THIS PLAN, (D) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.D OF THIS PLAN (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE IX.D OF THIS PLAN), OR (E) ARE OTHERWISE DISCHARGED, SATISFIED, STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO, ANY DISCHARGED, RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; *PROVIDED* THAT, FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS INJUNCTION SHALL PREVENT ANY OWNER FROM UTILIZING ITS WORTHLESS STOCK DEDUCTION IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN SECTION 4(E) OF THE PLAN SUPPORT AGREEMENT.

F.      *Setoffs and Recoupment*

Except as otherwise provided herein, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the applicable Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); *provided* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action.

In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right, or Cause of Action of a Debtor or a Reorganized Debtor, as applicable, unless (i) such Holder has timely filed a Proof of Claim with the Bankruptcy Court preserving such setoff or recoupment in such Proof of Claim, (ii) such Holder and the Debtors have otherwise agreed, (iii) such Holder is a counterparty to a rejected or unexpired nonresidential real property lease that provides for such setoff or recoupment, or (iv) otherwise provided in this Plan.

G.      *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or any administrative agent under the Exit ABL Documentation or the Exit Term Loan Documentation that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**Article X.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM INDEX NO. 657592/2019
NYSCEF DOC. NO. Case 1:20-cv-00442-MKV Document 1-2 Filed 01/16/20 Page 49 of 59 RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS   Doc 584-1   Filed 04/03/18   Page 49 of 59

Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters (including with respect to the ability of any Owner to utilize its worthless stock deduction), and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims, including establishment of a bar date, related notice, claim objections, allowance, disallowance, estimation and distribution;

9.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

11.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

13.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

15.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.      Enter an order or final decree concluding or closing the Chapter 11 Cases;

18.      Adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.      Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.      Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.      Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the Exit Facilities Documentation, which such disputes shall be adjudicated in accordance with the terms of the Exit Facilities Documentation);

22.      Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.      Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

24.      Enforce all orders previously entered by the Bankruptcy Court; and

25.      Hear any other matter not inconsistent with the Bankruptcy Code.

**Article XI.**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN**

*A.     Modification of Plan*

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Plan Support Agreement: (a) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code and the Plan Support Agreement, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; *provided* that any modification or amendments that impact the treatment of the DIP ABL Claims, DIP Term Loan Claims, Prepetition Term Loan Claims, and/or Claims held by the Owners shall require the consent of the DIP ABL Agent, DIP Term Loan Agent, Prepetition Term Loan Agent, and/or Owners as applicable.

*B.     Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*C.     Revocation of Plan*

Subject to the conditions to the Effective Date, the Debtors reserve the right, subject to the terms of the Plan Support Agreement, to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan in accordance with the Plan Support Agreement, or if entry of the Confirmation Order or the Effective Date does not occur, or if the Plan Support Agreement terminates as to all parties thereto in accordance with its terms, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors or any other Entity.

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM   INDEX NO. 657592/2019
NYSCEF DOC. NO.   Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 51 of 59   RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS   Doc 584-1   Filed 04/03/18   Page 51 of 59

## Article XII.

### MISCELLANEOUS PROVISIONS

*A.*     *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

*B.*     *Additional Documents*

On or before the Effective Date, the Debtors, with the consent, pursuant to the Plan Support Agreement, of (a) the Requisite First Lien Lenders and (b) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*C.*     *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of Title 28 of the U.S. Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code or as agreed to by the United States Trustee and Reorganized HoldCo, shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first. The Reorganized Debtors shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee until the entry of a final decree pursuant to Bankruptcy Rule 3022 to close the chapter 11 case of such Reorganized Debtor.

*D.*     *Reservation of Rights*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

*E.*     *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

*F.*     *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall also be served on:

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM    INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 52 of 59    RECEIVED NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 52 of 59

| Debtors | Counsel to the Debtors |
|---|---|
| Charming Charlie Holdings Inc.<br>6001 Savoy Drive<br>Houston, Texas 77036<br>Attn.: Melissa Boughton | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.: Joshua A. Sussberg, Christopher T. Greco, Aparna Yenamandra, and Rebecca Blake Chaikin<br><br>- and -<br><br>Klehr Harrison Harvey Branzburg LLP<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Attn.: Domenic E. Pacitti and Michael W. Yurkewicz |
| **United States Trustee** | **Counsel to the Consenting Term Loan Committee** |
| Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn.: Richard Schepacarter, Esq. | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn.: Jeffrey D. Saferstein, Adam M. Denhoff, and Sharad Thaper<br><br>- and -<br><br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attn.: Pauline K. Morgan and M. Blake Cleary |
| **Counsel to the Owners** | **Counsel to the Official Committee** |
| Andrews Kurth Kenyon LLP<br>600 Travis Street, Suite 4200<br>Houston, Texas 77002<br>Attn.: Timothy A. "Tad" Davidson II and Joseph P. Rovira<br><br>- and -<br><br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, New York 10036<br>Attn.: Gregg M. Galardi and Stephen Moeller-Sally | Cooley LLP<br>1114 Avenue of the Americas<br>New York, NY 10035<br>Attn: Cathy Hershcopf, Seth Van Aaltan, and Michael Klein<br><br>-and-<br><br>Benesch, Friedlander, Coplan & Aronoff LLP<br>222 Delaware Avenue, Suite 801<br>Wilmington, Delaware 19801<br>Attn: Jennifer R. Hoover and Kevin M. Capuzzi |

After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such requests.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM

NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV    Document 1-2    Filed 01/16/20    Page 53 of 59    INDEX NO. 657592/2019
NYSCEF: 12/19/2019

Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order the Debtors shall publish the Notice of Confirmation once in *The Wall Street Journal* (national edition). Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

G.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      *Entire Agreement*

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

J.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://www.omnimgt.com/charmingcharlie or the Bankruptcy Court's website at www.nysb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that, any such alteration or interpretation shall be reasonably satisfactory to (a) the Debtors, (b) the Requisite First Lien Lenders, (c) the Owners solely to the extent the provisions therein affect the legal and/or economic rights of the Owners, and (d) the Prepetition ABL Agent and the DIP ABL Agent, solely to the extent the provisions therein affect the legal and/or economic rights of the Prepetition ABL Agent and the DIP ABL Agent. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:

(x) valid and enforceable pursuant to its terms; (y) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (z) nonseverable and mutually dependent.

L.     *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.     *Conflicts*

To the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the DIP Orders and the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision in the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

N.     *Dissolution of the Committee*

The Official Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases on the Effective Date; *provided* that the Official Committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Professionals pursuant to sections 330 and 331 of the Bankruptcy Code.

O.     *Section 1125(e) Good Faith Compliance*

The Debtors, Reorganized Debtors, the DIP Agents, the DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent, the Prepetition Term Loan Lenders, the Exit ABL Agent, the Exit ABL Lenders, the Exit Term Loan Agent, the Exit Term Loan Lenders, the Owners, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

P.     *Further Assurances*

The Debtors, Reorganized Debtors, all Holders of Claims or Interests receiving distributions pursuant to this Plan, and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*        *        *        *        *

Respectfully submitted, as of the date first set forth above,

**Charming Charlie Holdings Inc.**
**(on behalf of itself and all other Debtors)**

By:     */s/ Rob Adamek*
Name:     Rob Adamek
Title:     Chief Financial Officer

## Exhibit B

### Notice of Confirmation

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHARMING CHARLIE HOLDINGS INC., *et al.*,[1] | Case No. 17-12906 (CSS) |
| Debtors. | Jointly Administered |

### NOTICE OF (I) ENTRY OF CONFIRMATION ORDER, (II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES

**PLEASE TAKE NOTICE THAT** on [●], 2018, the United States Bankruptcy Court for the District of Delaware (the "Court") confirmed the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Charming Charlie Holdings Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 564] (the "Plan"), which was attached as Exhibit A to the *Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Charming Charlie Holdings Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Confirmation Order").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Effective Date, as defined in the Plan, occurred on [      ], 2018.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.C. of the Plan, unless otherwise provided by a Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Notice and Claims Agent within thirty (30) days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection; *provided* that, with respect to nonresidential real property leases rejected pursuant to the Plan, Proofs of Claim arising from the rejection or repudiation of such lease must be filed with the Notice and Claims Agent within thirty (30) days after the effective date of such rejection. **Any Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases that are not timely filed shall be deemed**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Charming Charlie Canada LLC (0693); Charming Charlie Holdings Inc. (6139); Charming Charlie International LLC (5887); Charming Charlie LLC (0263); Charming Charlie Manhattan LLC (7408); Charming Charlie USA, Inc. (3973); and Poseidon Partners CMS, Inc. (3302).  The location of the Debtors' service address is: 6001 Savoy Drive 4th Floor, Houston, Texas 77036.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Confirmation Order.

**disallowed.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B.4 of the Plan.

> **PLEASE TAKE FURTHER NOTICE THAT** all requests for payment of an Administrative Claim (other than DIP Facilities Claims, Cure Costs, or Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Court and served on the Debtors no later than the Administrative Claims Bar Date. If a Holder of an Administrative Claim (other than DIP Facilities Claims, Cure Costs, or Professional Fee Claims) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or the Reorganized Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

> **PLEASE TAKE FURTHER NOTICE THAT** all final requests for payment of Professional Fee Claims must be filed with the Court and served on the Debtors (or the Reorganized Debtors) no later than the first Business Day that is 45 days after the Effective Date.

> **PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

> **PLEASE TAKE FURTHER NOTICE THAT** the Plan, the Confirmation Order, and other documents and materials filed in the Chapter 11 Cases may be obtained at no charge from Rust Consulting Omni Bankruptcy, the voting and claims agent retained by the Debtors in these Chapter 11 Cases, by: (a) calling the Debtors' restructuring hotline at (844) 452-2141; (b) visiting the Debtors' restructuring website at: http://www.omnimgt.com/charmingcharlie; and/or (c) by emailing charmingcharlie@omnimgt.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

*[Remainder of page intentionally left blank]*

2

FILED: NEW YORK COUNTY CLERK 12/19/2019 05:21 PM                INDEX NO. 657592/2019
NYSCEF DOC. NO.    Case 1:20-cv-00442-MKV   Document 1-2   Filed 01/16/20   Page 59 of 59   NYSCEF: 12/19/2019

Case 17-12906-CSS    Doc 584-1    Filed 04/03/18    Page 59 of 59

Dated: [_____], 2018                       /s/ _____
Wilmington, Delaware                       Domenic E. Pacitti (DE Bar No. 3989)
                                           Michael W. Yurkewicz (DE Bar No. 4165)
                                           **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                           919 N. Market Street, Suite 1000
                                           Wilmington, Delaware 19801
                                           Telephone:    (302) 426-1189
                                           Facsimile:    (302) 426-9193

                                           -and-

                                           Morton Branzburg (admitted *pro hac vice*)
                                           **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                           1835 Market Street, Suite 1400
                                           Philadelphia, Pennsylvania 19103
                                           Telephone:    (215) 569-2700
                                           Facsimile:    (215) 568-6603

                                           -and-

                                           Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
                                           Christopher T. Greco (admitted *pro hac vice*)
                                           Aparna Yenamandra (admitted *pro hac vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           601 Lexington Avenue
                                           New York, New York 10022
                                           Telephone:    (212) 446-4800
                                           Facsimile:    (212) 446-4900

                                           -and-

                                           James H.M. Sprayregen, P.C.
                                           **KIRKLAND & ELLIS LLP**
                                           300 North LaSalle
                                           Chicago, Illinois 60654
                                           Telephone:    (312) 862-2000
                                           Facsimile:    (312) 862-2200

                                           *Co-Counsel for the Debtors and Debtors in Possession*